Nolan *vs.* The State of Georgia.

JOHN H. NOLAN, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. When the accused is put on his trial for a capital offense, and the jury sworn and charged, if the indictment is not defective, he is in jeopardy of his life: *3 Kelly, 63.*

2. Two reasons only are recognized by the law as justifying the discharge of the jury before they have agreed upon a verdict and legally returned it into court, to-wit: the prisoner's consent, or necessity in some of its various forms, one of which is mistrial: *14 Georgia Reports, 426; 15 Ibid., 562; 23 Ibid., 1; 33 Ibid., 329; 3 Kelly, 53; 2 Ibid., 60.*

3. There being no authority of law for receiving a verdict of guilty and discharging the jury, without the prisoner's consent and without necessity, whilst he is absent involuntarily from the court, confined in jail, to do so is to deny him the right of having the voice of his jury authentically pronounced upon his guilt or innocence.

4. A verdict so received, having been, on his motion, set aside as illegal, when afterwards arraigned for trial on the same indictment for the offense before another jury, the prisoner may plead specially his former jeopardy in bar of a second trial, and if supported by the record and the extrinsic facts, the plea should be sustained, and, thereupon, the prisoner should be discharged.

5. His motion to set aside the verdict for such cause is distinguishable from a motion for a new trial, and consequently, does not subject him to be again put in jeopardy as though a new trial had been applied for and granted. In the present case a new trial was not a necessary incident of setting aside the verdict, and in point of fact, was neither applied for by the party nor expressly ordered by the court. The former jeopardy is clear, and the prisoner's claim to protection comes within the declaration of fundamental principles in the constitution of 1868: Code, section 5000.

Criminal law. Verdict. Jury. New trial. Before Judge TOMPKINS. Chatham Superior Court. November Term, 1874.

Nolan was placed on trial for the offense of murder alleged to have been committed upon the person of Martin Grogan. Evidence was submitted to a jury regularly impanneled, argument had, and a charge delivered. by the court. Subsequently, whilst the defendant was confined in jail, in the absence of his counsel, and without his consent, the jury returned a verdict finding him guilty of voluntary manslaughter, and were discharged. The defendant, at a subsequent term, moved that said verdict be set aside on the ground that it was rendered and published in his absence and without his right of being present having been waived. The court ordered accordingly.

The defendant was subsequently arraigned a second time upon the same indictment, when he pleaded specially in bar the aforesaid facts as constituting his having been placed once in jeopardy, and claimed his discharge.

This plea was overruled by the court, and defendant excepted.

A verdict finding the defendant guilty of voluntary manslaughter was returned.

Error is assigned upon the above ground of exception.

S. B. ADAMS; A. P. ADAMS, for plaintiff in error.

A. R. LAMAR, solicitor general, by WALTER G. CHARLTON, for the state.

BLECKLEY, Judge.

Without restating the specific propositions embraced in the head notes, some observations will be added on the general topic.

One trial, and only one, for each crime, is a fundamental principle in criminal procedure, and must be the general rule practically administered in all free countries. For the public authority, whether king or commonwealth, to try the same person over and over again for the same offense, would be rank tyranny. It would amount, in capital cases, to cruelty

not unlike that of keeping a loaded repeater pointed at the prisoner's head, and, with deadly purpose, but bad aim, discharging slowly one cartridge after another. . Though some exceptions to the general rule are to be admitted, as when a new trial is had on the prisoner's motion, or when judgment upon a void indictment has been arrested, the transcendant importance of the rule itself requires that the exceptions should be few and strictly guarded.

Where a first trial is complete, and its result, whether conviction or acquittal, left to stand, there is little or no room for any diversity of opinion on its sufficiency to bar a second. In such a case the ordinary plea of former conviction or of former acquittal is applicable, in terms, and would be upheld by all courts alike. But we reach debatable ground when we come to those cases in which trials have been begun but not ended; and some others, in which the endings have been ineffectual because irregular or wholly void. Courts are not fully agreed where jeopardy begins, or how far the defense of once in jeopardy differs, if at all, under our American constitutions, from that of *autrefois convict* or *autrefois acquit*, under the English common law. In the view of some judges jeopardy arises not out of the trial but out of the verdict; as if, in a combat intended to be mortal, there was no danger of being slain until you are hit.

The former decisions of this court have tended always to treat a jury, when impanneled, sworn and charged with the case, as the consecrated body of peers whose individual minds and personal consciences are laden with the prisoner's destiny. Not a jury, simply, but *this* jury, are to pronounce upon his guilt or innocence. They, and they alone, are to pass between the state and the prisoner, and arbitrate the grave matter in dispute. Their decision may or may not be final as against the prisoner, but it will conclude the state forever, unless annulled at his instance. Though he may avoid it for any material error committed against him, the state cannot avoid it at all, but is bound by it irrevocably, so long as he suffers it to stand. He has a right to have it

made up and legally returned into court, so that he may, if it suits him, accept it. A verdict, on this trial and from this particular jury, not on some future trial before another jury, is what he may demand, and what the state, subject only to obstacles amounting to legal necessity, undertakes to afford : "What say you, gentlemen of *this* jury, am I guilty or not guilty?" To this question he is entitled to an answer, if to obtain it be within the compass of legal possibility. He takes the risk of its being adverse, and may claim whatever chance there is of its being favorable. The fear of the situation is upon him, and he is entitled to its hopes also. Condemnation or deliverance, here and now, is the one alternative. Only with his consent, or for some legal necessity, can the crisis be ended whilst the voice of his jury remains undeclared.

What amounts to such legal necessity as will justify the discharge of a jury without a verdict, is a subject on which courts have widely differed : 5 Indiana, 290 ; 8 *Ibid,* 325 ; 14 *Ibid.,* 139 ; 16 *Ibid.,* 357 ; 26 *Ibid.,* 346, 366 ; 16 Arkansas, 568 ; 3 Ohio, 229 ; 14 *Ibid.,* 493. The tendency, of late, has been to lower the standard so as to comprehend moral as well as physical necessity, and in the region of the moral, to be content with very moderate tests. See the cases cited in the syllabus. Mistrial, from inability of the jury to agree, is clearly within the principle. So, too, is the case of voluntary absence by the prisoner when he ought to be present ; and upon this theory the cases in 2 Sneed, 550, and 7 Alabama, 259, can be upheld. But we think no possible expansion of the rule can include the return of a verdict during the enforced absence of the accused by imprisonment, and the discharge of, the jury as consequent thereupon. It is not quite clear from the report that the case in 2 Alabama, 102, was one of that kind, for the cause of the prisoner's absence is not expressly stated. His counsel were present, and made no request that he should be present. The supreme court, after ruling that judgment should be arrested, proceeded to the consideration of what further order should be made in the case ; and the order made was that the prisoner remains in

Nolan *vs.* The State of Georgia.

custody to await a trial *de novo*. The facts were treated as in all respects like those in The People *vs.* Perkins, 1 Wend., 91, in which latter case the prisoner was confined in jail when the verdict was received. No other authority is cited by the Alabama court, and we think The People *vs.* Perkins is not a satisfactory authority upon the point now in question. The direct point for judgment in that case was, whether the prisoner could be sentenced upon a verdict received while he was confined in jail. It was held that he could not; and the court went on to *advise* that the verdict be set aside, and that there be a new trial. This advice, to be recognized as settled law in favor of the proposition that the prisoner was subject to a second trial, ought, at least, to be shown to have been followed by a second trial; but no such fact appears. If a second trial had taken place, and the plea of former jeopardy overruled, whether the reviewing court, in passing upon the plea, would have administered to the actual case, the substance of its own advice, as law, we do not know. In 16 La. An., 400, is a case of misdemeanor, on the line of trying the prisoner over, whenever the first verdict is quashed. There the verdict was recorded in the French language, contrary to a statute which required it to be recorded in English on pain of absolute nullity. From a Georgia standpoint, the remedy for omitting to record the verdict in proper time and manner, would be, not a second trial, but an entry on the record, *nunc pro tunc*. In that case, however, the plea made no complaint of discharging the jury, but was simply a plea of former conviction, which was, of course, unsupported by a record in the French language, since, according to the statute, no verdict not recorded in English could be recognized.

In the case before us, the prisoner does not stand upon a former verdict but upon former jeopardy. His complaint is, that his case was given to a jury and never legally withdrawn. What that jury thought of his guilt or innocence has not been authentically declared; and the jury having been discharged, in his enforced absence and without his consent,

their opinion of his guilt or innocence can never be legally known. For aught that appears, every member of that jury was ready to acquit him. His defense before it may have been complete and triumphant. The error of receiving a formal verdict in the prisoner's absence would be nothing, if the jury had been retained in the box and required to render a valid one in his presence. The mischief was done by discharging the jury without any legal necessity, and without obtaining from it something that the law could recognize as a verdict. The prisoner was once fully in the power of that jury, and he had a right to such a verdict, as each several juror could avow before his face. Many years ago, in the county of Fayette, I witnessed the polling of a jury, on the return of a verdict of guilty, where the eleven jurors first called declared the verdict to be theirs, and only the twelfth man disowned it. The result was, that on reconsidering the case, the whole twelve agreed to a verdict of not guilty, and the prisoner was acquitted.

The motion to set aside the verdict in the case at bar was made after the denial of a motion in arrest of judgment: see 53 *Georgia Reports,* 137; and the state contends that such a motion is equivalent to an application for a new trial: 30 *Georgia Reports,* 191. This is an effort to draw the prisoner into a second jeopardy as the price of escaping from the first. It is hard enough to pay the price where a new trial is actually moved for and granted. We think such a traffic in jeopardies is not to be considered as conducted by implication. The bill of rights declares that "no person shall be put in jeopardy of life or liberty more than once for the same offense, save on his or her own motion for a new trial, after conviction, or in case of mistrial." Code, section 5000.

Judgment reversed.