SMALL *vs.* THE STATE OF GEORGIA. JOHNSON *vs.* THE STATE OF GEORGIA.

1. If, at the prisoner's instance, judgment on a verdict of guilty, found upon a good indictment, has been arrested, or the verdict set aside, not for any alleged defect in the indictment, but solely on the ground that the judge who presided at the trial was unauthorized by law to hold the court, he being the judge of another circuit, the prisoner may be again tried on the same indictment, whether the arrest of judgment or the setting aside of the verdict was erroneous or not. Inasmuch as the state cannot have a writ of error in a criminal case, if the prisoner procures to be made by the tribunal which has tried him, any direct, final adjudication which necessarily involves the legal conclusion that he was not in jeopardy, it is binding upon him as well as upon the state, and the question of former jeopardy thus closed, cannot be re-opened on a subsequent trial of the same case.

2. No error was committed on the second trial ; the evidence was sufficient, and the conviction and sentence were legal.

Criminal law.   Jeopardy.   Before Judge Tompkins.
Chatham Superior Court.   February Term, 1879.

At a special term for the trial of criminal cases, held in the county of Chatham, in the month of April, 1878, Johnson and Small were placed on trial for the offense of murder, alleged to have been committed upon one McDermott. The former was found guilty of murder, the latter of voluntary manslaughter. They moved in arrest of judgment upon the ground that the term at which they were tried was a special term of the superior court of said county, held under an order passed by Judge Tompkins, of the Eastern circuit, which comprises the county of Chatham, and Judge Johnson, of the Middle circuit, before whom they were tried, had no authority to try or sentence them. After argument had, the motion was sustained.

At the regular February term, 1879, of the superior court, they were again arraigned on the same indictment, when they pleaded as former jeopardy the proceeding above detailed. The plea was overruled, the defendants severed, and were tried with the same result as before. Each moved for a new trial upon numerous grounds, amongst them, because of alleged error in overruling the special plea of former jeopardy. The motions were overruled, and they excepted.

Johnson also moved in arrest of judgment.

The evidence was abundant to sustain the verdicts. The questions made by the motions for new trial, with the exception of that of former jeopardy, are not deemed sufficiently material to be reported.

J. J. Abrams, by R. E. Lester ; R. D. Walker, Jr., for plaintiffs in error.

R. N. Ely, attorney-general ; A. B. Smith, solicitor-general, for the state.

BLECKLEY, Justice.

The bill was found at a regular term of the superior court, and was in all respects a good indictment. The special term was appointed by the judge of the circuit, but was opened and held by the judge of another circuit. The statutory provisions which were supposed to be applicable are in sections 242, 243 and 3245 of the Code, which, thrown together, are as follows : "The jurisdiction of the judges of the superior courts is co-extensive with the limits of this state, but they are not compelled to alternate unles required by law. Each of the said judges shall discharge all the duties required of him by the constitution and laws, for the circuit for which he was elected or appointed, although he may hold courts in other circuits, and may also exercise other judicial functions for them when permitted by law. The judges of the superior courts of this state may, in their discretion, hold adjourned terms of said courts in every county within their respective circuits, when the business requires it to close the dockets, and may, in the exercise of a sound discretion, cause new juries to be drawn for the same, or order the juries drawn for the regular term to give their attendance at such adjourned terms ; and such judges are authorized to hold special terms of said courts for the trial of criminals, in any county of their circuits, at discretion, and to compel the attendance of grand and petit jurors, either of a previous term, or to draw new jurors for the same, according to the laws now of force." After verdicts of guilty were rendered at the special term, each of the prisoners moved in arrest of judgment. The motion made by Johnson is not copied in the record, but there is a recital of its substance. That made by Small was upon the sole ground that Judge Johnson, "holding court outside of his said circuit, has no authority under the statute of the state of Georgia to try or to sentence the said defendant, and that the discretion to hold said court is vested in the honorable Henry B. Tompkins, and not in the honora-

able Herschel V. Johnson." The final order on Small's motion was in these terms: "After argument heard on the foregoing motion, it is ordered that the same be, and it is hereby sustained, and that the judgment be arrested." The final order on Johnson's motion was as follows: "It appearing to the court that John Johnson, who has been on trial for the offense of murder in this court, has been convicted, and a motion in arrest of judgment having been made, based upon the want of jurisdiction of the court, caused by the illegality of the judge of the middle circuit presiding over a special term for the trial of criminal cases in Chatham county, in the eastern circuit,' it is ordered, adjudged and decreed, that the said John Johnson be remanded to jail, and that the verdict be set aside." These orders were passed during the special term, and each of them was signed by Herschel V. Johnson, as the judge presiding. The second trial of the prisoners took place upon the same indictment, at a regular term of the court, and Judge Tompkins presided. The special plea filed by Small set out the indictment, the plea of not guilty, the verdict, and all the proceedings had at the special term, and alleged that upon the same indictment, for the same offense, he being the same identical person, he was, at the special term, put in jeopardy, tried and found guilty of voluntary manslaughter, and the verdict duly received and recorded; and that afterwards, "the judgment in said cause was duly arrested by the judge of said court as appears of record." By Johnson, two special pleas were filed, one of them alleging "that he has been convicted once by a jury of his countrymen, in Chatham superior court, all of which appears of record; that he now pleads *autre fois convict*, and says he cannot be tried again, under the constitution of Georgia, as that prohibits a second jeopardy," etc., and the other alleging "that he cannot be tried upon the same indictment; that after an arrest of judgment *that* is the end of the first indictment, and he cannot be tried again under said indictment, that a new indictment must be found."

The special pleas were all stricken. After the second verdict of guilty Johnson moved in arrest of judgment, the ground being substantially the same as the matter of his second special plea. The motion was overruled.

1. Notwithstanding the difference in phraseology of the two final orders granted at the special term, we think the orders the same in substance. It is obvious that they were granted on motions similar in their nature, and that the ground of the motions was one and the same, to-wit: the incompetency of Judge Johnson to hold a special term of Chatham superior court, he being the judge of another circuit. For this cause, that same judge, while presiding at that same special term, arrested the judgment in each case. The pleas all allege that judgment was arrested, not that there was a futile or fruitless attempt to arrest it; and, except the second one filed by Johnson, they vouch the record. Without scrutinizing the pleas as to matters of form, the general question for our decision is, whether they present a good defense to this indictment, either as pleas of *autre fois convict*, or as pleas of former jeopardy. There being no adjudication that the indictment is defective, and it having been found at a regular term of the court, we see no reason why the second trial could not take place upon it, rather than upon a new indictment, if the prisoners were subject to be tried a second time at all. The indictment was not disposed of if the guilt or innocence of the prisoners was still open to inquiry. Considering the ground upon which judgment was arrested, the sufficiency of the indictment was in nowise involved in it, and if the offense was left to be passed upon by another jury, the indictment was left also. The real controlling question may be stated in this form : Did what transpired at the special term leave the prisoners subject to be tried for the same offense at a subsequent term ? There can be no doubt that this question ought to be answered in the affirmative if the decision of Judge Johnson as to his own incompetency to preside at the special term was, in itself, correct, or if its correctness is

now to be assumed on the principle of estoppel or of *res adjudicata.* If there was no court competent to try the prisoners, they were not convicted, nor were they in jeopardy. Judge Johnson, at the instance of the prisoners themselves, held that there was not such a court. They procured the decision to be made, and took the benefit of it. The state, as we have held, upon the direct point in these identical cases, 61· *Ga.*, 640, 641, was bound by it, and could not have it set aside. Are not those who invoked and induced it bound also ? The state could take no writ of error to review it. It was a direct final adjudication, which, in itself, necessarily involved the legal conclusion that there was no jeopardy. Had we been in Judge Johnson's place, we should probably have made a different decision from that which he made, and were we sitting now upon a lawful writ of error to his decision, we should most probably reverse it. But the present writ of error searches only the rulings of Judge Tompkins, made later and at a different term. If Judge Johnson's decision were directly under review, it might not be difficult to overthow it, for I frankly admit that there is a look of inconsistency in performing a judicial act appropriate, not to a judge in vacation, but only to a court proper, such as arresting a judgment, and giving as a reason for it that the court was, at the very time, not legally in session, for want of a competent presiding officer. And against the whole view we have presented of estoppel or *res adjudicata,* I can conceive of a somewhat forcible line of argument which may be supposed to run thus: "How can it be held that judgment was arrested, or that there was an adjudication of anything ? There can be power to decide upon the absence of a particular power, but how can there be power to decide upon the absence of all power ? The very act of deciding is the exercise of some power, and how can some be exercised where there is none ? Can a man determine judicially that he is not a judge ? Can an organism be a court for the purpose of deciding that it is not a court ? Where there is no power to try a

prisoner, is there, after the form of a trial, a power to set aside the result by arresting the judgment or quashing the verdict? If the trial is a nullity for lack of power in the tribunal, is it not equally so, whether the same tribunal pronounces it valid or invalid? Why should the opinion of a tribunal whose determinations are nullities be invoked? How can it judge of its own acts, since to judge at all is not its function? What can be done to expose its impotency but to treat its proceedings as a nullity until they are brought in question elsewhere before some presence which at least claims to be clothed with judicial authority?" To all this I can but answer that if Judge Johnson's doings were not the act of a court they were of no validity, and if they were the act of a court there was a court to adjudge them invalid, and they were so adjudged on the motion and at the instance of the prisoners. I may suggest, too, that a presiding judge may certainly decide there is a court, and that the power of deciding at all implies the possibility of either an affirmative or a negative determination. If we take it that there was no superior court at the special term, we must consider the proceedings bad; and if we take it that there was a superior court, they have, by that very court, been finally and conclusively, though erroneously, adjudicated to be bad. We need not, and will not, look behind that adjudication to determine for ourselves whether they were bad or good. We accept the decision which the prisoners caused to be made, and by which they forced the state to abide.

I have found no case which I can say is enough in point to be a clear precedent. Those who prize hints and analogies may consult 1 Bish. Cr. Pr., §852, where, I think, (for I have not the book before me,) are cited, 3 P. Wms. 439; 4 Co., 45; Com. Dig., Indictment, N; 4 Bl. Com., 375; 8 Rich., 295, and 33 Ala., 389. Also 25 N. Y., 406, 418; 42 N. H., 474; 4 Blackf., 156; Thach. Cr. Ca., 112; 12 Neb., 387; 13 Mass., 455, 457; 4 Mo., 376; 2 Blackf., 5; 1 Va. Ca., 188, 248; 16 Texas, 246, 30: 14 *Ib.*, 387; 12

Ind., 369; 5 Coldw., 7; 3 Heis., 321; 1 Eng., 187; 9 Humph., 43, 677; 2 Pike, 229; 6 Carr. & P., 337; 4 Mass., 477; 15 N. C., Q. B., 198; 4 Park. C. C., 527; 16 Ark., 568, 601; 5 Casey, 323; 2 Park. C. C., 676; 55 *Ga.*, 521.

2. The motions for a new trial were properly overruled. Under the evidence and the law applicable to it, the other points made in the various grounds seem too plain to need discussion.

Judgment affirmed.