## ALEXANDER v. THE STATE.

1. It is, while charging upon a statement made by one on trial for crime, erro-
neous to use language calculated to impress the jury that they ought to be
cautious in giving credit to what he said.
2. A judge should not in the hearing of a jury compliment a witness.

Argued November 19, — Decided December 10, 1901.

Indictment for murder. Before Judge Sheffield. Early supe-
rior court. October 16, 1901.

*A. G. Powell* and *W. M. Hammond*, for plaintiff in error.
*J. A. Laing*, solicitor-general, *G. L. Comer*, and *R. H. Sheffield*,
contra.

LUMPKIN, P. J. The grand jury of Early county indicted R. W.
Alexander for the murder of George W. Cherry. The accused was
found guilty of voluntary manslaughter, and brings up for review
a judgment overruling his motion for a new trial. This motion
contains numerous grounds, but none of them save two, with which
we shall specifically deal, discloses the commission·of any material
error or presents for the consideration of this court any new or im-
portant question of law.

1. The accused relied largely upon the statement which he made
to the jury in his own defense. In this connection the court,
charged: "In criminal cases the defendant is not allowed to be
sworn as a witness for himself; it would in important cases be too
great a temptation to commit perjury; but, while not permitted to·
swear, the law will not absolutely close his mouth in his own de-
fense, but it permits him to make an unsworn statement as to the
whole transaction." Exception is taken to the phrase, "it would
in important cases be too great a temptation to commit perjury."
We think that in using this expression the court committed grave
error. Undoubtedly this was an important case. Indeed, it was
one involving the very life of the accused. The jury were, there-
fore, in substance instructed that in such a case the accused ought·
not to be permitted to swear as a witness, because he would be un-
der too great a temptation to commit perjury. Necessarily this.
also carried the idea that the accused would be under an equal, if
not greater, temptation to speak falsely when availing himself of
his privilege of making an unsworn statement to the jury. It is.

true that the judge followed the language above quoted with appropriate instructions with respect to the right of the jury to accept or reject the statement of the accused, as they saw proper; but, unfortunately, these instructions were prefaced with a warning to the effect that the jury should be extremely cautious in believing what the accused said. It would have been far better, as this court has often remarked, to give in charge to the jury the statute law upon this subject, leaving them free to consider the statement and give to it whatever weight they saw proper.

2. It was insisted by the accused that on the occasion of the difficulty which resulted in the death of the deceased, the latter was armed with a heavy iron steelyard pea. Jordan, the main witness for the State, testified he was present when the homicide was committed and did not see any steelyard pea. After this witness had retired from the stand, the judge had him recalled and subjected him to a rigid examination with respect to his knowledge concerning the presence or absence of a steelyard pea on the occasion of the mortal difficulty. Before beginning this examination, the judge instructed the jury that "he was going to ask Mr. Jordan about a matter, but that the same was not evidence and was not to be considered by them for any purpose." In answer to questions from the judge, the witness stated, "I have already told all I know about it, and I have told the truth," to which the judge replied: "I don't mean to say or intimate that you have not told the truth about it, as far as you were asked; but under rules of the law the lawyers can not ask you what people told, without the leave of the court; but the court can ask you the question, and you can now tell the court what you had no right to tell the jury. I don't want you to misunderstand me, Mr. Jordan; I know you to be an honorable man, and I have no doubt that you have told the truth about this matter, as far as you were allowed to answer." The court then proceeded to elicit from the witness that he had heard a colored man named Jack Davis say that a steelyard pea was found at the place where the killing occurred. Upon the strength of the information thus brought out, counsel for the accused caused Davis to be sent for, and he testified that, as matter of fact, a steelyard pea was found at the place of the difficulty shortly after its occurrence. The accused excepted to the language used by his honor in the hearing of the jury to the effect that the witness Jordan was an honor-

able man, and that the judge had no doubt that this witness had told the truth.    This exception was certainly well taken.    As remarked above, Jordan was the main witness for the State, and the character of the language addressed to him by the judge necessarily tended to give this witness a high standing with the jury — most probably actually had this effect.    In using the language complained of, his honor certainly violated section 4334 of the Civil Code, which forbids a judge from intimating any opinion as to the evidence.    He could hardly have done so more effectually than by complimenting the witness in the manner pointed out.    See, in this connection, *Pound* v. *State*, 43 *Ga.* 90; *Jefferson* v. *State*, 80 *Ga.* 16; *Florida Central R. Co.* v. *Lucas*, 110 *Ga.* 121.    It makes no difference that the judge instructed the jury that what passed between himself and the witness Jordan was not to be considered by them.    They heard his words, and no man could dare say they were not thereby influenced to some extent, at least.

It was insisted by counsel for the State that the judge did not mean to say he had no doubt that all of Jordan's testimony was true, but merely that he had told the truth with respect to his knowledge of the steelyard pea.    The phrase, "you have told the truth about this matter," was comprehensive enough to include all the witness had said concerning the homicide; but grant that the words, "this matter," should have been understood as referring only to the steelyard pea, the language of the judge was still highly objectionable, because the issue with respect to the steelyard pea was a matter of vital importance in the case.

It would not be proper to close this discussion without stating that, taking into view all which occurred, the motive of the judge was to render the accused the important service of enabling his counsel to bring out the whole truth of the case.    This, however, does not do away with the error which his honor committed, or relieve this court of the necessity of correcting it.

*Judgment reversed.    All the Justices concurring.*