## REED *v.* THE STATE.

1. One ground of the motion for a new trial contends that the court erred in admitting the following testimony of a State's witness, over the objection of the accused, to wit: "She [Mrs. Probasco] says she came out of the church, that Mr. Reed was laying back in his car asleep, and she got up in the car and took hold of him and says: 'Let's go.' She

Criminal Law, 16 C. J. p. 831, n. 74; p. 832, n. 76; p. 1013, n. 50, 53; p. 1015, n. 80; p. 1016, n. 85; 17 C. J. p. 295, n. 63; p. 308, n. 59.
Homicide, 30 C. J. p. 310, n. 25; p. 366, n. 5, 6; p. 402, n. 78.

says he said: 'Who's boss?' and she says she said: 'Well, we are ready to go,' and she said he tried to get the car started, and made like he could not start the car, and commenced fighting." The objection made at the time was that no foundation had been laid for it. When the objection was made, the court said: "I do not recall it." The solicitor-general answered: "I asked the question, I know." The court then said: "So there will be no question, bring her back." The movant insists that, notwithstanding the statement of the court, the witness Mrs. Probasco was not recalled, and the witness Harmon was then permitted to testify as hereinbefore set out. *Held:* The ruling of the court was not error. If the witness was not recalled, counsel should have again called attention to that fact. At any rate, while this ground shows an irregularity, it is not such as will require the grant of a new trial.

2. During the introduction of evidence and while the State's witness was on the stand, counsel for the accused objected to questions propounded by the solicitor-general, on the ground that they were leading. Whereupon the trial judge remarked: "I don't think a man like Mr. Harmon, who is an officer and intelligent, would be led or influenced by the solicitor." *Held:* Such expression does not offend Penal Code § 1058, and does not show cause for reversal.

3. The following charge of the court was not error for any of the reasons assigned: "In determining what weight you may attach to the testimony of any witness, you will look to his or her appearance on the stand, take into consideration their manner of testifying, their interest or want of interest in the case, their feeling, prejudice, or bias, if anything of the sort has been made to appear, together with their opportunity of knowing the facts about which they testify, and their inducement, if any, to swear falsely."

4. The following charge of the court was not error for any of the reasons assigned: "When the credibility of a witness is attacked, as by an effort to impeach him or her, in any of the methods pointed out by law, which I have just described, the jury then becomes the triors of the credibility of the witness sought to be impeached, and of any witness or witnesses by whose testimony the attack is made. You are to weigh the opposing testimony, and, at last, say whether you will discredit the testimony of the witness sought to be impeached, and consequently give credit to that introduced by way of impeachment, or whether you will discredit the testimony introduced for the purpose of impeachment and credit that of the witness attacked."

5. The following charge of the court was not error for any reason assigned: "An arrest may be made for a misdemeanor by an officer without a warrant, if the offense is committed in his presence or within his immediate knowledge, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant."

6. The following charge of the court was not error for any reason assigned: "I charge you, that one upon whom an arrest is unlawfully being made by an officer, that such person sought to be arrested has the right to resist force with force proportionate to that being used in detaining him; and that if such arrest or attempted arrest by such an officer is

unlawful, and in the progress of the transaction the officer is about to commit a felony upon the party whom he seeks to unlawfully arrest, and so acts and makes such a show of violence as to excite in the person sought to be arrested the fears of a reasonable man that a felony is about to be committed upon him, and such person acts under the influence of those fears, and not in a spirit of revenge, he may protect himself, although it may be necessary to slay the officer for that purpose."

7. It was not error for the court to fail to give in charge to the jury the principle of law, that "although the jury might not believe that the deceased was at the time about to commit a felony upon the defendant, or that the circumstances were sufficient to arouse the fears of a reasonable man that a felony was about to be committed upon him, nevertheless if they believed from the evidence that deceased was, at the time, endeavoring to arrest defendant, and this arrest, if made, would have been illegal, and defendant, in attempting to prevent such illegal arrest, shot and killed the deceased, he would not be guilty of the offense of murder, although the killing of the deceased may not have been necessary in order to prevent the arrest, but would be guilty of the offense of voluntary manslaughter, provided he shot without malice, and for the purpose of preventing such illegal arrest."

8. The following charge of the court was not error for any reason assigned: "Further in this connection I charge you that, irrespective of whether the deceased was acting legally or illegally, if you find, under the rules of law and evidence I have given you in charge, that the defendant killed the deceased in the way and manner alleged in the indictment, without excuse, mitigation, or justification, he would be guilty of the offense of murder."

9. The verdict is supported by evidence.

No. 5482. November 19, 1926.

Murder. Before Judge Maddox. Walker superior court. May 19, 1926.

*T. W. Stanfield* and *Rosser & Shaw,* for plaintiff in error.

*George M. Napier, attorney-general, J. F. Kelly, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

Gilbert, J. Marshall Reed was convicted of the offense of murder. His motion for a new trial was overruled, and he excepted. There was evidence, though conflicting, together with statement of the accused, from which the jury was authorized to find the following facts: On August 29, 1925, Saturday night, the accused, together with a woman companion, Mrs. Probasco, traveling in a Ford car arrived at a church in Rossville, Walker County. They parked the car on a narrow street, nearly opposite the dwelling and cold-drink stand of T. C. Hearn, who was a deputy sheriff. The accused accompanied his companion to the church door, when he returned to the automobile, she alone attending the

services. When the services were concluded, the companion found her way back to the Ford car where the defendant had dropped to sleep. In the meantime others of the church attendants had stopped in at the drink stand of Hearn, among them W. H. Price, G. A. Holcombe, and Mrs. Holcombe. Holcombe resided next door to and adjoining Hearn. Leaving Price and Hearn in the drink stand, the Holcombes went home. In a few minutes, about nine o'clock, Holcombe was attracted by a disturbance across the street in the Ford car occupied by the accused and Mrs. Probasco. While Holcombe was standing in his door, about six steps away, he heard Mrs. Probasco say, "You know I was at home ironing when you made me come down here," and saw the accused strike her. Holcombe walked to Hearn's door and said to Hearn, "There is somebody out here fighting, man and woman." About that time he heard the woman crying, in a low voice. Hearn got up, got his hat and put his pistol in his hip-pocket, and came out the door, saying, "Well, let's go out there and see about it." Hearn, Price, and Holcombe walked up near the car, and Hearn said: "What does this mean?" The accused said, "I don't know as it is any of your business." Hearn asked the woman if the accused was fighting or hitting her, and she answered, "Yes, he hit me." Hearn then said: "This has to be cut out." The accused replied with an oath, and Hearn said, "I will have to take you down," and stepped up with one foot on the running-board of the car; whereupon the accused said: "You God-damn son of a bitch, you can't take me nowhere." He turned the woman loose and dropped his hand down under the steering-wheel, and when he did that he shot Hearn and Price and turned back to Holcombe. At this point Holcombe walked off, going back towards Hearn's porch, when the next shot was fired. Hearn did not have his gun out in his hand at all, did not make any effort to get his gun; he threw his hands up, and did not at any time curse the accused, but talked to the accused in a kind way. Holcombe, after the shooting, and before the ambulance came for Hearn and Price, both of whom were shot, helped to get Hearn in the ambulance; the dead man was lying in the road. Holcombe testified: "When I got there I helped turn him over, and his pistol fell out of his pocket, his pistol was in the scabbard. . . A man could not have gotten his hand on the trigger of the pistol in the scabbard and snapped it."

14

The circumstances were also stated by another witness as follows: When Holcombe reported that something was going on wrong outside, he and Hearn went out to see about it. Hearn walked up to the car, and said: "What is the trouble out here?" Reed said: "I don't know as it is any of your business." Holcombe, Price, and Hearn were standing by the car. Hearn asked the woman, "Was he hitting or fighting you?" She said: "Yes," whining it out like she might have been crying. Witness did not think she was crying, but she said, "Yes, he hit me over the head." Hearn remarked: "I am an officer," and said, "What are you beating this woman about?" Reed replied, "What in the hell is it to you?" and "I God, is she your'n?" Hearn said, "No, I am an officer, and will have to take you down." Reed ripped out an oath, and said, "You God-damn son of a bitch, you won't take me nowhere." About this time Hearn stepped off the running-board and threw up his hands, took his hand off the car and put it up, and Reed "scrouged" down under the steering-wheel of the car. Witness noticed his hand under the steering-wheel and his hand on his left arm, and about that time the first shot was fired. Hearn was standing about even with the muzzle of the pistol. Then he attempted to shoot Holcombe, but did not hit him. Hearn staggered around the back of the car and fell. Hearn died almost immediately from the effects of the wound inflicted by the accused. The woman got out of the car and fled. After the shooting, the accused left in the car very rapidly, wrecking the car in a short distance by running into a telegraph-pole. A witness who witnessed the wrecking testified that the accused appeared to be drunk or excited. The accused left the car, and was afterwards arrested. Other evidence and the statement of the accused tended to show that he acted in self-defense in resisting an illegal arrest.

1. The first headnote does not require elaboration.

2. The motion for a new trial assigns as error that the court expressed an opinion approving the character of the witness and tending to impress the jury that the witness was entitled to credit, in the following circumstances: L. W. Harmon, sheriff of the county, was examined as a witness. The solicitor-general asked, "What else did she say about anything, Mr. Harmon, about how she left home that night?" Counsel for the movant said, "I ob-

ject to him leading the witness; let him state all that was said."
The court said: "I don't think a man like Mr. Harmon, who is
an officer and intelligent, would be led or influenced by the solic-
itor." Movant contends that this statement on the part of the
court was error in that it gave potency to the witness's testimony,
and was an expression of opinion by the court that the witness,
being an officer and intelligent, was above being influenced and
would tell the truth irrespective of being asked leading questions,
and tended to impress upon the jury that the fact that the wit-
ness was an officer entitled him to credit as a witness. It was
also contended that Harmon was being examined as to previous
statements made to him by Mrs. Probasco, a material witness for
movant, the purpose of the State being to impeach Mrs. Probasco;
and movant contends that the statement of the court was prejudi-
cial because it led the jury to believe that the testimony of the
witness, who was an officer, should be accepted in preference to
that of the woman witness, who was not an officer; that this was
especially true in view of the fact that the person killed was also
an officer and held a commission as deputy sheriff under the wit-
ness; and that the language would tend to lead the jury to believe
that officers were not so likely to err as other persons, from which
the jury might have drawn the conclusion that the deceased, being
an officer, was not so likely to be at fault as the movant at the
time of the killing.

In *Oliveros* v. *State,* 120 *Ga.* 237 (47 S. E. 627, 1 Ann. Cas.
114), this court was called upon to decide whether the court erred
in overruling a plea of former jeopardy under the following cir-
cumstances: Oliveros had been indicted for the offense of em-
bezzlement. On the trial a receipt signed by the accused, acknowl-
edging reception of the money, was offered in evidence by the
State, and objected to by the defense. The trial judge, in giving
his reason for admitting it, expressed his opinion as to the effect
and weight of such a receipt as evidence. After the ruling, the
trial proceeded for the remainder of the day. The next morn-
ing, over a protest of the accused, the judge discharged the jury and
declared a mistrial because of the remarks made by him, admitting
them to be so erroneous as to vitiate any verdict brought in by
the jury. On the accused being again arraigned, the plea of
former jeopardy was offered, and was overruled. In order to

decide whether the plea was properly overruled, this court deemed it necessary to determine whether the mistrial was authorized. Mr. Chief Justice Simmons, delivering the opinion, elaborately discussed Penal Code § 1058, which is as follows: "It is error for the judge of the superior court, in any case, during its progress, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved, or as to the guilt of the accused; and a violation of the provisions of this section shall be held by the Supreme Court to be error, and the decision in such case reversed, and a new trial granted, with such directions as the Supreme Court may lawfully give." Also the constitutional provision which declares, "No person shall be put in jeopardy of life, or liberty, more than once for the same offense, save on his or her own motion for a new trial after conviction, or in case of mistrial." Constitution of Georgia, article 1, section 1, paragraph 8 (Civil Code, § 6364); Penal Code, § 11. The court held that the granting of a mistrial over the protest of the accused was not authorized. Chief Justice Simmons said: "To justify the grant of a mistrial without the consent of the accused there must be either a moral or a physical necessity," citing *Nolan* v. *State, 55 Ga.* 521 (21 Am. R. 281). After so deciding the issue for the majority of the court, Chief Justice Simmons further said: "But comparing the remarks of the judge and the words of this section, I, speaking for myself, can not see how it was a violation of this section [§ 1058], especially when I consider the circumstances under which the remarks were made. A receipt signed by the accused was offered in evidence. Objection was raised by the accused, one of the grounds being that the receipt was not the highest evidence. After counsel had stated these objections the judge, in announcing his decision as to the admissibility of the evidence, used the words set out in the first portion of this opinion. In my opinion, there was not a word or a sentence used by the judge which constituted an expression or intimation to the jury as to what had been proved in the case. Technically, there is a difference between evidence and proof. Evidence tends to establish or disprove an alleged matter of fact in issue. Proof is the effect of evidence, while evidence is merely the means of making proof. A fact is not proved unless it is established. The remarks of the judge did not express or intimate an opinion that

any fact had or had not been proved or established. Indeed, the remarks were made about an instrument which had been offered in evidence, but which had not, prior to the judge's remarks, been admitted. If subject to any criticism, it was that the judge expressed an opinion as to the weight of the evidence, and not as to what had been proved. Expression of opinion as to the weight of the evidence may or may not be error, according to the circumstances, under which the opinion is expressed; but even where error, it need not be a violation of the Civil Code, § 4334 [P. C. 1910, § 1058]. Again, speaking for myself, I think this court has given this section too broad and liberal a construction. It was doubtless enacted to correct a custom of the judges which had descended to them from the common-law courts of England and this country, but which the legislature thought was a usurpation of the functions of the jury. Whether this be true or not, we all think that when an objection is made to evidence offered, the judge has a right, if he deems proper, to give the reasons for his decision on the objections; and such reasons so given, if pertinent to the objections made, do not constitute such an expression of opinion as to violate the code section above cited. This construction of the act of 1850 (now Civil Code [1895], § 4334) [Penal Code of 1910, § 1058] was adopted soon after the passage of the act, in the cases of *Wyley* v. *Stanford, 22 Ga.* 397, and *Reinhart* v. *Miller,* Ib. 403 (10) [68 Am. D. 506]. See also *Scarborough* v. *State, 46 Ga.* 33; *Claflin* v. *Continental Jersey Works, 85 Ga.* 28 [11 S. E. 721]. In *Croom* v. *State,* 90 *Ga.* 430 [17 S. E. 1003], this court held, through Bleckley, C. J., that 'Generally what the court says in stating to counsel the reason for denying a motion to exclude or rule out evidence is, if pertinent to the question raised by counsel, not error, although the reason given involve a statement as to certain testimony which is already in, or as to there being nothing in evidence showing that the circumstances are as counsel claim.' In *Scarborough* v. *State,* supra, McCay, J., said: 'It would be impossible to carry on a trial if this section of the Code, prohibiting a judge from expressing any opinion as to what is proven, is to be construed as is contended for. A judge, in deciding as to admissibility of testimony, must always, to some extent, decide as to its weight, since often its admissibility depends on that; so he must often

determine what has been proven, so as to say whether certain other things may be proven. To decide a nonsuit, he must decide if there be enough proven to justify a verdict, etc. The only practicable rule is to treat the jury as possessed of common sense and as capable of understanding what is addressed by the judge to them and what is not. He may not express to the jury any opinion; but if in the decision of any legal question, as it arises, he must pass upon facts, the statute does not apply. It must be reasonably construed. In this view of the law, we see no error in the remark of the judge. He only said to the counsel what was his view of the law, and this he had a right to do.' From these authorities it would seem that the judge in the present case expressed no such opinion of what had been proved as would violate section 4334, and his remarks, therefore, could not be such misconduct on his part, as was argued by counsel for the State, as to compel him to grant a mistrial, even if misconduct on the part of the judge would authorize such a proceeding."

The above quotation is not presented as a ruling by the court, but only as cogent reasons expressed by the then Chief Justice. In the present case the motion for a new trial does not disclose what evidence, if any, had been adduced from the witness. The movant merely complained that "during the examination of said witness L. W. Harmon the solicitor-general asked the following question [stating it]. Whereupon counsel for movant said: 'I object to him leading the witness; let him state all that was said.' The court then said: . 'I don't think a man like Mr. Harmon, who is an officer and intelligent, would be led or influenced by the solicitor." Movant's ground for a new trial is that the expression of the judge gave potency to the witness's testimony, and was an expression of opinion on the part of the court that Mr. Harmon, being an officer and intelligent, was above being influenced by the solicitor, and would tell the truth irrespective of being asked leading questions, and tended to impress upon the jury that he was an officer and was entitled to credit as a witness. As stated by Chief Justice Simmons in the *Oliveros* case, this was not an expression or intimation of opinion as to what had or had not been proved, or as to the guilt of the accused. Without discussing the distinction between proof and evidence, as brought out by Chief Justice Simmons, we think it is clear that

in this instance the trial judge did not express an opinion on any matter inhibited by the code. In discussing questions similar to this, there seems to be some apparent confusion among the decisions of this court, but we think the confusion is more apparent than real. The decisions were written with reference to the facts of each case, and these facts must be considered closely in order to understand the different conclusions reached.

In *Patton* v. *State,* 117 *Ga.* 230 (9, 10) (43 S. E. 533), the court was dealing with a motion for a new trial, based upon a scene enacted before the jury. Discussing the episode, this court said: "Such things ought not to occur. Where possible, they should be nipped in the bud before they have time to ripen into damage. It is not necessary for the court to wait for either party to object. The court itself has an interest. The public is interested, and it is a high privilege which the judge has to act on his own motion." Mr. Justice Lamar referred to the seriousness of the situation, and the result that might ensue had the court, without any motion to that effect, declared a mistrial; and the possible claim thereafter by the accused that he had been put in jeopardy and could not again be put upon trial. Mr. Justice Lamar also said: "Where he [the accused] deliberately fails to ask a mistrial, and where the judge does all that he is asked to do by way of rebuke to the offending party, and gives instructions to the jury not to be influenced by what has transpired, there is a legal cure for what has happened." In *Childs* v. *Ponder,* 117 *Ga.* 553 (43 S. E. 986), it was held: "A new trial will not be ordered because the trial judge in overruling the motion to dismiss the petition, before any evidence had been introduced, remarked, in the presence of the jury, 'I will overrule the motion and let you go on, but I don't see how the plaintiff can recover.'" This ruling was based on the failure of the complaining party to move for a mistrial.

In *Potter* v. *State,* 117 *Ga.* 693 (45 S. E. 37), this court was called upon to deal with a ground of a motion for a new trial based on remarks of the trial judge to a witness on the stand. The witness, referring to previous testimony, admitted that he had made a mistake; whereupon the following colloquy occurred: "The court: 'You said just now that you made one statement, and then you said you would change that statement?' Witness: 'Yes,

sir.' The court: 'Did you tell them that because you were satisfied that you had made a mistake?' Witness: 'Yes, sir; I was satisfied that I had made a mistake.' His honor thereupon remarked: 'You did exactly right, then, to change your statement.' To the correctness of this observation the witness gave his consent by saying, 'Yes, sir.'" This ground was held to be reversible error, notwithstanding the fact that there was no motion for a mistrial. This case is strongly relied upon by plaintiff in error, 'who insists that it is controlling authority and demands a reversal of the case. We think the *Potter* case was correctly decided, and is controlling authority, provided the facts of the present case fall within the same principle as those in the *Potter* case; but we think the facts are different. In the *Potter* case the court expressly approved what had been *said* by the witness, and there was no escape from the conclusion that the jury must have inferred that in the opinion of the court the witness in his then proof was worthy of credence. In the present case, it does not appear that the witness (Harmon) up to the time of the colloquy had given any proof, and the court was not speaking and did not speak in approval of any proof. If anything, the court committed an indiscretion, but not a reversible error. It is far better for trial judges to restrict themselves to clear and definite rulings and to omit remarks which are unnecessary and inappropriate. Such indiscretions tend to prolong litigation. As instances of improper remarks which were held not to be reversible error, we cite *Perdue* v. *State,* 135 *Ga.* 277 (69 S. E. 184); *Simmons* v. *State,* 138 *Ga.* 137 (74 S. E. 1000). In both of these cases the trial judge used expressions inappropriate and improper, but such as were held not to be reversible error. See also: *Croom* v. *State,* 90 *Ga.* 430 (supra); *Moore* v. *State,* 130 *Ga.* 322 (60 S. E. 544); *Taylor* v. *State,* 132 *Ga.* 235 (63 S. E. 1116); *Moore* v. *McAfee,* 151 *Ga.* 272 (11) (106 S. E. 274); *Barnett* v. *Strain,* 151 *Ga.* 553 (107 S. E. 530); *Kay* v. *Benson,* 152 *Ga.* 185, 186 (108 S. E. 779). Cases wherein it was held that the judge had expressed an opinion violative of the code, are: *Hubbard* v. *State,* 108 *Ga.* 786 (33 S. E. 814); *Jaques* v. *State,* 111 *Ga.* 832 (36 S. E. 104) (by five Justices); *Alexander* v. *State,* 114 *Ga.* 266 (40 S. E. 231); *Grant* v. *State,* 122 *Ga.* 743 (50 S. E. 946); *Jenkins* v. *State,* 123 *Ga.* 529 (51 S. E. 598).

3. Movant assigns error on the following charge of the judge to the jury: "In determining what weight you may attach to the testimony of any witness, you will look to his or her appearance on the stand, take into consideration their manner of testifying, their interest or want of interest in the case, their feeling, prejudice, or bias, if anything of the sort has been made to·appear, together with their opportunity of knowing the facts about which they testify, and their inducement, if any, to swear falsely." The error assigned is, that the court used the word "will" in the charge, making it mandatory on the jury to take into consideration the appearance of the witness on the stand, the manner of testifying, etc., in determining the weight to be given the testimony of the witness; and that this was tantamount to the use of the word "shall." Movant insists that while the jury had the right, if they saw fit, to take into consideration the things enumerated in determining the credibility of the witness, they were not bound to do so, and that ·it was error on the part of the court to so charge. This ground is without merit. Compare *Jordan* v. *State,* 130 *Ga.* 406 (60 S. E. 1063); *Robinson* v. *State,* 158 *Ga.* 48 (122 S. E. 886).

4. Error is assigned on the following charge to the jury: "When the credibility of a witness is attacked, as by an effort to impeach him or her in any of the methods pointed out by law, which I have just described, the jury then becomes the triors of the credibility of the witness sought to be impeached, and of any witness or witnesses by whose testimony the attack is made. You are to weigh the opposing testimony, and, at last, say whether you will discredit the testimony of the witness sought to be impeached, and consequently give credit to that introduced by way of impeachment, or whether you will discredit the testimony introduced for the purpose of impeachment and credit that of the witness attacked." The criticism is, that, the court having thus charged the jury that a witness may be impeached by proof of contradictory statements previously made, "the aforesaid charge is not a correct statement of the law, especially as applied to an effort to impeach a witness by proof of contradictory statements, in this: the effect of the charge was to arraign the testimony of the witness sought to be impeached against the testimony of the witness offered for the purpose of impeachment by proof of con-

tradictory statements, and instructed the jury that the acceptance
of the testimony of the witness sought to be impeached as true
would necessarily discredit the testimony of the impeaching wit-
ness." We do not think the criticism is justified. On the con-
trary, the charge states a correct principle of law. As stated by
movant,. the excerpt quoted above appears to have been taken
from the opinion in *Powell* v. *State,* 101 *Ga.* 9, at page 20 (29
S. E. 317, 65 Am. St. R. 277). It is true, in that case as in
many other instances, what is said by this court in an opinion is
not framed for the purpose of making it an appropriate charge
of the trial judge to the jury. In many instances it would be
absolutely incorrect and reversible error. In the present case
we do not think that it is error. Mr. Justice Little, in the *Powell*
case, was endeavoring to point out the ineptitude of the use of
the expression of the trial judge, "successfully impeached." In
a comparatively recent case the subject was again discussed, and
the inappropriateness of the expression was pointed out. It was
said that it is confusing to use the words "successfully impeached"
in place of the words "successfully contradicted," as used in the
Civil Code (1910), § 5884. That section declares: "When a
witness is *successfully contradicted* as to a material matter, his
credit as to other matters is for the jury." As pointed out in
*Dean* v. *State,* 154 *Ga.* 533, at page 535 (114 S. E. 809), "Where
a witness is sought to be impeached by previous contradictory state-
ments not made in court, the credit of the *witness in other matters*
is for the jury, notwithstanding the witness has been 'successfully
contradicted' as to a material matter."

The sentence just quoted from the Code applies where a wit-
ness has not been really impeached, but only where there has been
an effort to impeach. In the next sentence of the section we find
a provision applicable to a witness who has been really impeached,
or "successfully" impeached. The language is as follows: "But if
a witness swear willfully and knowingly falsely, his testimony
ought to be disregarded entirely, unless corroborated by circum-
stances, or other unimpeached evidence." It will be observed that
the language here employed fits exactly the definition of perjury.
The conclusion, therefore, is that when one has been guilty of
perjury, he should not be believed, unless corroborated. But sec-
tion 5884 finally concludes: "It is for the jury to determine the

credit to be given his testimony where impeached for general bad character or for contradictory statements out of court." The last sentence applies where the circumstances do not prove the witness guilty of perjury. As stated in the *Dean* case, the confusion of terms has been repeatedly pointed out in decisions of this court. In the excerpt complained of in this case, the expression "successfully impeached" is not used. Nor was the term "successfully contradicted" used. Our discussion of this distinction was deemed useful, because of the argument made in the brief of counsel. The excerpt is in accord with the concluding sentence of § 5884, and also with § 5883, which declares: "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." There is nothing in the cases of *Chandler* v. *State,* 124 *Ga.* 821 (53 S. E. 91), *Waycaster* v. *State,* 136 *Ga.* 95 (70 S. E. 883), and *Henrich* v. *McCauley,* 151 *Ga.* 138 (106 S. E. 94), cited by plaintiff in error, contrary to what has been stated above.

5. Movant assigns error in the following charge to the jury: "An arrest may be made for a misdemeanor by an officer without a warrant, if the offense is committed in his presence or within his immediate knowledge, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." Movant insists that the charge was error, for the reason that there was no evidence showing or tending to show that any offense had been committed in the presence of the deceased or within his immediate knowledge, or that the offender was endeavoring to escape. As will be seen from the statement of the facts preceding the opinion, the accused and his companion were in an automobile in very close proximity, that is, about six steps from the cold-drink stand of the slain officer and the residence of the witness Holcombe, adjoining. Holcombe saw the accused striking the woman, and reported it to Hearn, a deputy sheriff. Both immediately repaired to the scene across the narrow street, where, in the presence of the accused, the officer asked the woman what was the trouble, and she replied that the accused was striking her. At the same time the accused, who had hold of the woman, released her, using vulgar and profane language. We therefore think, under the evidence, that the charge was not erroneous. Compare *Alexander* v. *State,* 160 *Ga.* 769

(129 S. E. 102); *Ramsey* v. *State,* 92 *Ga.* 53 (17 S. E. 613).

6. Error was assigned on the following charge of the court: "I charge you that one upon whom an arrest is unlawfully being made by an officer, that such person sought to be arrested has the right to resist force with force proportionate to that being used in detaining him, and that if such arrest or attempted arrest by such officer is unlawful, and in the progress of the transaction the officer is about to commit a felony upon the party whom he seeks to unlawfully arrest, and so acts and makes such a show of violence as to excite in the person sought to be arrested the fears of a reasonable man that a felony is about to be committed upon him, and such person acts under the influence of those fears, and not in a spirit of revenge, he may protect himself, although it may be necessary to slay the officer for that purpose." Movant insists that the foregoing charge was error, for the reason that the language used "made it incumbent upon movant that the deceased was, at the time, about to commit a felony upon him, and so acted and made such a show of violence as to excite in movant the fears of a reasonable man that a felony was about to be committed upon him. Movant contends that this charge as given deprived him of the right to have the jury consider whether the circumstances were such, at the time, as to arouse in movant the fears of a reasonable man that a felony was about to be committed upon him by the deceased and those acting in conjunction with deceased, although no felonious assault may have been impending at the time." Movant insists that the error contained in the foregoing excerpt is in using the conjunctive "and" in place of the disjunctive "or." Even if it be conceded that the charge in the respect pointed out was verbally inaccurate, it was not calculated to mislead the jury or to injure the movant.

7. Movant contends that the court erred in failing to give in the charge to the jury the principle of law, that, "although the jury might not believe that the deceased was at the time about to commit a felony upon the defendant, or that the circumstances were sufficient to arouse the fears of a reasonable man that a felony was about to be committed upon him, nevertheless if they believed from the evidence that deceased was, at the time, endeavoring to arrest defendant, and this arrest, if made, would have been illegal, and defendant, in attempting to prevent such illegal arrest, shot

and killed the deceased, he would not be guilty of the offense of murder, although the killing of the deceased may not have been necessary in order to prevent the arrest, but would be guilty of the offense of voluntary manslaughter, provided he shot without malice and for the purpose of preventing such illegal arrest." This ground of the motion does not show error.

8. Error is assigned on the following charge of the court: "Further in this connection I charge you that, irrespective of whether the deceased was acting legally or illegally, if you find, under the rules of law and evidence I have given you in charge, that the defendant killed the deceased in the way and manner alleged in the indictment, without excuse, mitigation, or justification, he would be guilty of the offense of murder." It is contended that the effect of this charge was to instruct the jury that the fact that the deceased may have been illegally attempting the arrest of movant could not be considered, within itself, in mitigation or justification of the killing, but that the facts independent of the illegal act of the deceased must appear sufficient to mitigate or justify the killing. Movant contends that the act of the deceased in attempting an illegal arrest of movant might, within itself, and irrespective of the force used by the deceased, or the necessity of the killing to prevent such illegal arrest, be sufficient to reduce the killing to voluntary manslaughter, and the foregoing charge deprived movant of the right to have the jury consider whether the fact that deceased was acting illegally at the time was sufficient mitigation to reduce the killing to voluntary · manslaughter. We do not think the charge is subject to the criticism made. In fact we see no error in the charge. It would seem to follow, as the necessary conclusion, that if the defendant killed the deceased in the way and manner alleged in the indictment, *"without excuse or mitigation or justification, he would be guilty of the offense of murder."* [Italics ours.] And the words, "without excuse, mitigation, or justification," would seem to necessarily mean without excuse, or mitigation, or justification, of any kind or character.

9. The verdict was supported by the evidence.

*Judgment affirmed. All the Justices concur, except*

Russell, C. J., and Atkinson, J., who dissent from the ruling in the second headnote and second division of the opinion, and from the judgment of affirmance.