A04A1454. STARR v. THE STATE.

(604 SE2d 297)

SMITH, Chief Judge.

Mark Robert Starr was convicted by a jury of one count of child molestation. His motion for new trial, as amended, was denied, and he appeals. Starr argues that the victim's videotaped statement and his own two audiotaped statements were improperly admitted, and he enumerates as error a portion of the trial court's jury charge. Because we conclude that in its jury instructions the trial court improperly expressed an opinion on the evidence in violation of OCGA § 17-8-57, we reverse and remand this case for a new trial.

Construed in favor of the verdict, evidence was presented that Starr, a friend of the victim's father, was visiting in the victim's home on the date of the incident. Near the end of his visit, he was alone with the four-year-old victim in her "toy room" and was playing a computer game with her. The victim reported to both parents and to Dawn Warren, a local children's advocate, that Starr had touched her genital area. She told Warren that "it hurted [sic] when he was digging in it" with his hand. Warren's videotaped interview with the victim was played for the jury.

1. Starr enumerates as error the following instruction, given during the final charge to the jury, which almost identically tracks the language of OCGA § 24-3-16:

A statement made by a child under the age of fourteen years describing any act of sexual contact or physical abuse performed with or on the child by another is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify *and the court finds*

*that the circumstances of the statement provides [sic] suffi-cient indicia of reliability.*

(Emphasis supplied.) Starr contends that no objection was raised to the admission of the victim's statement and consequently that no need arose for the trial court to explain its rationale for admitting it. He argues that "[t]he trial court's expression of its opinion that the child's statement had 'sufficient indicia of reliability' was entirely gratuitous" and constituted an opinion as to what had been proved, in violation of OCGA § 17-8-57. We agree.

OCGA § 17-8-57 provides:

It is error for any judge in any criminal case, during its progress or in [the court's] charge to the jury, to express or intimate [an] opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

The proscription set out in this Code section logically encompasses a prohibition against the court's commentary on the veracity of a witness. In *Alexander v. State*, 114 Ga. 266 (40 SE 231) (1901), in the jury's presence, the trial court told a witness, " 'I know you to be an honorable man, and I have no doubt that you have told the truth about this matter, as far as you were allowed to answer.' " Id. at 267 (2). This witness "was the main witness for the State," id. at 268, and in reversing the defendant's conviction the Georgia Supreme Court concluded that "the character of the language addressed to him by the judge necessarily tended to give this witness a high standing with the jury — most probably actually had this effect." Id.

Here, the trial court did not directly address a witness. But in its unrequested, gratuitous recitation of the Child Hearsay Statute, the court could well have influenced the jurors' conclusions about the truth of the victim's statements. We must presume that the jurors were listening carefully to the trial court's instructions, and we find it entirely reasonable that those jurors could have concluded from the instruction at issue that the trial court believed the victim's state-ments to be reliable.

Witness credibility, most particularly that of the four-year-old victim, was "of vital importance in the [State's] case." *Alexander*, supra. No other person witnessed the alleged molestation, and even though

the victim may have claimed that Starr harmed her, the medical evidence obtained shortly after the alleged incident showed no trauma or injury to the victim.

Like the trial court in *Alexander*, supra, the trial court instructed the jury that it had not intended to comment on the credibility of witnesses. Nevertheless, like the Supreme Court in that case, we are constrained to conclude that the jury heard the words of the trial court during its earlier instruction and that "no man could dare say [the jurors] were not thereby influenced to some extent, at least." Id. at 268.

The State argues that the trial court's charge merely served "as an explanation to the jury as to why the victim did not take the stand and testify personally." The appellate courts of this state have indeed repeatedly held that a trial court's remarks giving reasons for a particular ruling do not constitute an expression of opinion or a comment concerning the evidence. See, e.g., *Young v. State*, 269 Ga. 490, 494 (4) (500 SE2d 583) (1998); *Goode v. State*, 171 Ga. App. 901, 902 (2) (321 SE2d 410) (1984). As Starr points out, however, the admissibility of the victim's statements was not in issue and therefore did not require a ruling or explanation of a rule of law from the trial court. And at any rate, the question of reliability under OCGA § 24-3-16 was one for the trial court and not the jury. "OCGA § 24-3-16 imposes a dual burden on the trial court and the proponent of child hearsay testimony. The State must present evidence proving the child's reliability, and *the court* must assess that evidence." (Citation, punctuation and footnote omitted; emphasis supplied.) *Ferreri v. State*, 267 Ga. App. 811, 814-815 (600 SE2d 793) (2004).

Considering the charge as a whole, as we must, *Sedlak v. State*, 275 Ga. 746, 749 (2) (d) (571 SE2d 721) (2002), we cannot agree with the State that the instruction at issue simply constituted "a statement that the declaration met a very minimal threshold of probative value so that it could be considered by" the jury. However well-intentioned the trial court may have been in giving the instruction, the court nevertheless expressed an opinion, at least impliedly, as to the veracity of the victim. This was improper, and reversal is required.

2. Because they may recur on retrial, we address Starr's remaining enumerations of error.

(a) Starr argues that the videotaped interview with the victim was erroneously admitted as a violation of his Sixth Amendment right of confrontation under *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), which was decided after the time of trial. Assuming, without deciding, that Starr preserved this issue for appeal and that the interview was testimonial in nature, we find no basis for reversal. The United States Supreme Court explicitly

stated in *Crawford* that if a "declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." (Citations omitted.) 124 SC at 1369. Although the victim did not testify, the record shows that she was available for cross-examination. The prosecutor stated that the victim was in the courthouse and "available if necessary." We therefore find no error with respect to this contention.

(b) Starr contends that the trial court erred in admitting two tape-recorded conversations between investigator Stephanie Carani and himself. At trial, Starr objected to admission of the audiotapes, arguing that Carani had improperly offered a reward to him. Among other arguments, he raises this contention on appeal. The transcripts of the taped interviews show without dispute that at the beginning of Carani's first conversation with Starr, Carani stated that "counseling is basically what we're looking for," and she asked Starr, "What do you think should happen to somebody who'd do that to a kid?" Carani repeatedly discussed with Starr the possibility of counseling through-out this interview and an interview she conducted three days later. Once during the first interview she told Starr, "We're concerned about if this happened making sure it doesn't happened [sic] anymore. And that's not by locking you up for the rest of your life because it isn't going to happen, I guarantee you that."

It is axiomatic that "incriminatory admissions and confessions must not be admitted if there is evidence, arising from the testimony as to the confession itself, that the confession was induced by the *slightest hope of benefit*, or the remotest fear of injury." (Emphasis in original.) *King v. State*, 155 Ga. 707, 712-713 (118 SE 368) (1923). We recognize that Starr did not confess to the crime in this case. He maintained his innocence during the interviews in question. But he admitted that he was alone with the victim only after Carani initiated discussions concerning counseling. His statements to Carani, al-though not incriminating standing alone, were nevertheless incul-patory. Notably, the State argues in its brief that during those statements, Starr "conceded that he was in the immediate presence of the victim at the date, time and place when and where disputed criminal conduct took place. The conversations between the Appel-lant and the investigator go into the particular circumstances within which the ostensible offensive conduct transpired." These damaging admissions of fact were made after Carani held "out at least some hope of reward by special consideration." *Askea v. State*, 153 Ga. App. 849, 851 (3) (267 SE2d 279) (1980). The taped interviews were not voluntary; they were erroneously admitted and should not be admit-ted on retrial. We need not reach Starr's remaining arguments.

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 3, 2004.

Richard E. Allen, for appellant.
Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, for appellee.