DANIEL *v.* THE STATE.

No. 11812.   NOVEMBER 27, 1937.

*Fred A. Gillen* and *Eugene Epting,* for plaintiff in error.

*M. J. Yeomans, attorney-general, Henry H. West, solicitor-general,* and *O. H. Dukes, assistant attorney-general,* contra.

ATKINSON, Presiding Justice.   Willie Frank Daniel was indicted for the murder of Herman Stein by shooting with a pistol. On his trial the defendant was convicted and sentenced to be executed.   His motion for new trial was overruled, and he excepted.

The homicide was committed in the City of Athens, about 10 o'clock Sunday morning.   Stein, the decedent was a policeman. During the night before, an attempt had been made by some one to break into a filling-station.   Between 6 and 9 o'clock Sunday morning the police officers at the city hall were notified that the defendant was the person, and that he was down at "Fuller's Alley." Three policemen, including Stein, went to arrest him.   They did not have a warrant.   Officers authorized to issue warrants lived conveniently near, but no effort was made to procure a warrant, for the reason assigned by one of the policemen that if they had attempted to do so the defendant could have got away.   Stein went to one end of the alley, while his companion officers went to the other.   Stein proceeded along the alley and met the defendant. Stein attempted to arrest him, and caught him in the belt with his left hand.   A scuffle ensued.   The defendant tripped Stein, who fell on his back, and the defendant crouched down over him, got hold of Stein's pistol and shot him through the head while in such position, inflicting the mortal wound.   The defendant ran away, and was arrested on the following morning at Lula, in another county, while walking along the railroad.   He lived in Athens. So far as material to be stated, the evidence introduced by the State tended to show commission of the homicide in the foregoing circumstances.   Baby Stovall, a witness for the defendant, testified, that he saw the defendant on the morning that Stein was

shot; that he saw him on the porch at Bailey's house; that when witness went up to Bailey's house "the game had not started; they couldn't make change. I told them the law was coming, and they all scattered." In his unsworn statement before the jury the defendant said: "I left there [home] and went down on Broad Street. . . Mack Crowe had my coat. I went down there after my coat. Mack wasn't at home, he was down in the alley. I left his house, . . and when I went down in the alley he was at Bailey's house. I walked in the house. They were skinning, and I asked Mack for my coat. Baby Stovall came in and said 'the law' was out there. Me and Jim Smith went out of the house like this. . . Mr. Stein come out from the house over here, and I was standing on the bank. He said, 'What is your name, boy?' I told him 'Willie Frank Daniel.' . . I stood there with him, then he said 'Your name is Willie Frank Daniel?' He said, 'Roger Allen lives here?' I said, 'Yes, sir.' That time he grabbed me and caught hold of me like this. I said, 'What you got me for, Mr. Stein?' He said, 'You know what.' He hit at me and my hat fell off; my hat just fell like that behind me. He drawed his pistol and said, '—— —— you, I ought to kill you.' At that time I grabbed him, and both of us fell and went to scuffling over it, and I snatched up like that, and . . the gun fired, and I left there and went down Waddell Street. . . I didn't do it intentionally. It was all done through a mistake and scuffling."

The judge instructed the jury: "If in this case the defendant admitted the killing, admitted that this man was shot in any way—I don't say he did, I say it is entirely for you to say whether or not the man was shot in a scuffle. But if he did, but coupled that admission with declarations which, if you believe them, showed justification, or that it was an accident, no presumption that the homicide was murder arose from such admission." This charge was not erroneous, as contended, on the ground that it "in effect authorized the jury to presume malice from the defendant's admission of the shooting, although the defendant stated with that admission circumstances of justification; the jury under this charge being instructed that they might presume malice from the admission and disbelieve the statements of the defendant, coupled therewith as to accident and justification."

■ The court charged: "Now to unlawfully slay an officer who is without authority of law to make an arrest for a misdemeanor, where the motive of the slayer is merely to avoid an illegal arrest, is manslaughter, and not murder." This charge was not erroneous, as contended, "in that it requires the defendant not only to show that the arrest was illegal, but to show that he knew it was illegal at the time he resisted, and that his sole motive and purpose in resisting was the fact that the attempted arrest was illegal."

■ The court charged: "Now on the subject of what would constitute a legal or an illegal arrest, gentlemen, I charge you that the law is this: An arrest may be made for a crime by an officer, either under or without a warrant, if the offense is committed in his immediate or constructive presence, or if the offender is endeavoring to escape, or for any other cause there is likely to be a failure of justice for want of an officer to issue a warrant. Whether for any cause there is likely to be a failure of justice for the want of an officer to issue a warrant are questions for the jury. And I charge you that if you believe from the evidence in this case that there was no warrant and there was not likely to be a failure of justice for the want of an officer to issue a warrant, or if the crime was not committed in the presence of an officer, or if the offender was not endeavoring to escape, then I charge you that if you believe that to be the fact in this case, the arrest in this case would have been illegal. On the other hand, if you believe that there was no warrant and that the offender was endeavoring to escape, or a crime was committed in the presence of the officer, or for any other cause there was likely to be a failure of justice for the want of an officer to issue a warrant, the officer could lawfully make an arrest; and, as I have stated to you, it is a question for you to determine from the evidence in this case." It was not erroneous to give this charge, on the ground, as contended, that there was "no evidence in the case that the arrest was attempted under circumstances set out in the section of the Code referred to in this portion of the charge; the matter was not a question which should have been submitted to the jury." Whether or not the charge would have been appropriate as related to the offense for which the officers were seeking to arrest the defendant, if Stein found him participating in a gambling game, as indicated

by the above-quoted portions of the testimony of the defendant's witness, and in his statement before the jury, Stein would have had the right to arrest him without a warrant.

4. The ruling in headnote 4 does not require elaboration.

*Judgment affirmed. All the Justices concur.*