## 36193. G. BERND COMPANY *v.* RAHN.

Decided October 2, 1956—Rehearing denied December 4, 1956.

714

720

*Bloch, Hall, Groover & Hawkins, Denmark Groover, Jr.,* for plaintiff in error.

*Martin, Snow & Grant, Lewis, Wylly & Javetz,* contra.

CARLISLE, J. ■ The defendant filed a general demurrer and several special demurrers, and the plaintiff filed amendments to his petition. In their brief the defendant's counsel make the statement that the amendment met several of their special demurrers, but did not argue or insist on a ruling on their special demurrers and did not point out the ones that were not met by the amendment, but argued their general demurrer and insisted that the general demurrer should have been sustained, as this case is based on negligence and there can be no recovery under the laws of Georgia from a manufacturer who sells his products to a dealer who in turn sells it to a purchaser and the purchaser feeds it to his animals even though the feed kills or damages the animals, and even though the manufacturer was negligent in the manufacture of the product. We do not agree with this contention, but hold that if a manufacturer negligently in the manufacture of feed to be sold to the public for the purpose of being fed to animals of the purchaser puts therein substances or minerals that will kill or injure the animals, the manufacturer who puts it on the market is liable, and cite in support of this holding *Burns* v. *Ralston Purina Co.,* 210 *Ga.* 82 (77 S. E. 2d 739) in which the Supreme Court reversed a nonsuit in favor of a manufacturer by the lower court in an action for the death of turkeys allegedly due to moulded feed fed to the turkeys. That case is

authority for holding that a manufacturer is liable for his negligence in the manufacture of feed if his negligence in the manufacture of same causes damages to the purchaser of the feed thus manufactured by him if the purchaser is damaged by the manufacturer negligently putting into the feed material or supplements that cause the death or injury of the animals to which the feed is fed. We also cite in support of this proposition *Eades* v. *Spencer Paint Co.*, 82 *Ga. App.* 123, 129 (60 S. E. 2d 543), in which it is said: "There is no controlling precedent in this State contrary to the ruling made in the *Ellis* case, and the trend of cases decided in this State appears to be to allow recovery on the part of a consumer or user of a product, if through a failure to exercise ordinary care on the part of a manufacturer or someone not in privity with the user, the product is imperfect, defective, or not as represented when placed on the market, and damage to the consumer or user is proximately caused thereby."

A case very similar to this case in which the Georgia law was applied by the Fifth Circuit of the U. S. Court of Appeals is Swift & Co. *v.* Morgan & Sturdivant, 214 Fed. 2d 115, wherein the owner of dairy cows which had been killed by eating cottonseed meal which was defective due to negligence of the defendant manufacturer, was permitted to recover for his damages. Consequently, the trial court did not err in overruling the general demurrer.

■ In ground 4 of the defendant's amended motion for new trial, complaint was made because the court permitted certain evidence over the objection of the defendant as being a conclusion elicited by counsel of the plaintiff from a witness of the plaintiff, Miss Lithauser, that she regarded as necessary an immediate report because she understood the situation was critical and the animals were dying like flies. The objection was made on the ground that the question called for a conclusion. "It is not error to admit evidence over the general objection that the question called for a conclusion." *West Lumber Co.* v. *Schnuck*, 85 *Ga. App.* 385 (4) (69 S. E. 2d 577).

■ Ground 5 of the defendant's amended motion for new trial complains that the trial court admitted the testimony of the plaintiff that "my place is known as the anthrax place," over the objection that it called for a conclusion of the witness. The rule

■

stated in the foregoing division is equally applicable to this division.

■ Ground 6 of the defendant's amended motion for new trial contends that the court committed error in allowing, over the objection of the defendant, the reading in the presence of the jury, of a publication in which the writer urged his membership to take all practical steps to examine imported bone meal for anthrax spores and to process this meal when practical to kill these germs. The objections were based upon the reasons (1) that it was hearsay; (2) that the phrase "imported bone meal" did not sufficiently distinguish between steam bone meal and raw bone meal when the evidence in the case showed that there was a vast difference between the sterility of the two and the process used in making the two sterile or not sterile. The court admitted the evidence and limited its purpose to demonstrate what knowledge or warning this witness had concerning bone meal and not as proof that the statement or the practice contended in the statement was correct or proper. The trial court did not err in denying this ground of the motion as there was other evidence offered by exactly the same witness and to the same effect without objection. The erroneous admission of evidence as to a certain fact is not cause for a new trial where the same fact was shown by other evidence of the same character to which no objection was made. *Arcady Farms Milling Co.* v. *Betts,* 93 *Ga. App.* 255 (91 S. E. 2d 289).

■ Ground 7 of the defendant's amended motion for new trial contends that the court committed error in permitting the plaintiff to show on cross-examination of the defendant's agent, Mr. Sigal, over the objection of the defendant, that after the various notices about the outbreak of anthrax in the United States, and the dangers in the use of certain bone meals, the defendant did not take any steps to withdraw from the market any of the Bernd's Mineral Supplement which it had put into the hands of dealers.

This evidence was admissible as bearing on the question of whether or not the defendant with such notice exercised ordinary care in the original mixing of the bone meal in the supplement, and also on the question of its diligence after the defendant received additional information and further warnings before the

feed was used by the plaintiff in its failure to do anything about withdrawing the meal from the market when it had every reason under the evidence to know that the supplement was dangerous and should not have been used in feeds.

■ Grounds 8 and 9 of the defendant's amended motion for new trial contend that the court committed error in allowing in evidence certain exhibits. These grounds present no question for decision by this court as they are incomplete in failing to set out the exhibits.

■ Ground 10 of the defendant's amended motion for new trial contends that the court committed error in permitting the plaintiff to ask a hypothetical question without any evidence to support the hypotheses. This ground recites that the defendant objected to the question "on the basis that it was a hypothetical question without the evidence to support the hypotheses." This was too general as an objection as it did not point out wherein it was contended that the question was not supported by the evidence, and therefore being incomplete, it was not error for the court to overrule the objection. See in this connection, *Freeman v. Young*, 147 *Ga.* 699 (95 S. E. 236). Furthermore, the witness stated that he could not answer the hypothetical question.

■ The defendant has expressly abandoned ground 11.

■ Ground 12 of the defendant's amended motion complains of the court's refusal to allow the defendant to show that after its manufacture of the particular products which it was contended caused the plaintiff's injury and after the various regulations of the Department of Agriculture introduced by the plaintiff with reference to steamed bone meal, that the defendant sought to import from a foreign country some steamed bone meal and furnished the Commissioner of Agriculture a statement as to its method of processing and was allowed to import the steamed bone meal, it being stated that that evidence was to show that it was a part of the general transaction during a period of time when bone meal was a suspected source of anthrax. This ground is without merit. The defendant was seeking to show transactions had with the Commissioner of Agriculture after this feed was manufactured in regard to the Commissioner's permitting the defendant to import steamed bone meal. It would not be material in this case how diligent the defendant was in importing

other steamed bone meal after the damage was sustained. The supplement had already been negligently manufactured prior to the transaction by which they were seeking to show that they were allowed by the Commissioner of Agriculture to import other bone meal. See in this connection *Curtis* v. *Macon Ry. &c. Co.*, 18 *Ga. App.* 145 (88 S. E. 997).

■ The trial court did not commit error in denying the defendants' motion for new trial based on the general grounds, or in denying the defendants' motion for judgment notwithstanding the verdict, as the testimony was sufficient for the jury to infer that the feed was negligently manufactured by the defendant, and its negligence in the manufacture of the feed was the proximate cause of the plaintiff's damages. There was sufficient proof of each of the elements of damage for the jury to render the verdict rendered. As counsel for the plaintiff state in their brief, and we find this statement to be supported by the record, the jury was authorized to find:

"(1) Bone meal is a frequent and dangerous source of anthrax infection and should never be used in a feed for animals unless it has been rendered sterile by heat and pressure sufficient to kill the anthrax bacilli, and the defendant knew all this.

"(2) Degelatinized bone meal is not sterile and has not been subjected to heat and pressure sufficient to kill anthrax bacilli.

"(3) Defendant used degelatinized bone meal in manufacturing the Bernd's Mineral Supplement which it shipped to Neville Feed Company on March 24, 1952, and plaintiff purchased 5 sacks in their original container and in the same condition Neville Feed Company received it from defendant.

"(4) While plaintiff's cows were being fed a feed into which this supplement had been mixed, they suddenly began to die from anthrax.

"(5) An unopened bag of defendant's supplement on hand in plaintiff's feed room was found to contain anthrax bacilli and the anthrax bacillus was also located in empty sacks from which the supplement had been poured in mixing the feed and the anthrax bacillus was found in the mixed feed after the supplement was added and in the mixing machine, but was not found in any of the other component parts of the mixture before the supplement had been added to it."

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*