36692, 36721. YANCEY, Administratrix *v.* FIDELITY & CASUALTY COMPANY OF NEW YORK; and *vice versa.*

DECIDED SEPTEMBER 12, 1957—REHEARING DENIED OCTOBER 9, 1957.

*Daniel Duke,* for plaintiff in error.

*Allison & Pittard, Lokey & Bowden, Hamilton Lokey,* contra.

NICHOLS, J. ■ The general grounds of the motion for new trial will be dealt with first.

The action was brought against the surety on the sheriff's official bond for the alleged illegal arrest of the now deceased J. W. Yancey, it being alleged that the said J. W. Yancey died while incarcerated in the county jail after the alleged illegal arrest. The uncontradicted evidence showed that prior to 7:30 p.m. on the date of the alleged illegal arrest the sheriff procured a warrant for the arrest of the deceased which was not to be used unless the deceased should violate the law on the night of the arrest (there having been no known violation by the deceased prior to the issuance of the warrant), that later the deceased did violate the "liquor laws" by selling "moonshine" to an "undercover agent," that no arrest was made at the time of the violation, that after this violation the sheriff and his "aides" (certain Federal and State agents), made a "roundup" of other known violators for whose arrests warrants had been obtained, and then returned to the home of the deceased where

the "undercover agent" sought to obtain another violation by the deceased, but was unsuccessful because the deceased was *sold out,* and that the arrest was then made by the sheriff and the "undercover agent," not under the warrant, but because the alleged violation took place in the presence of the "undercover agent" some two and one-half or three hours earlier.

The defendant relies, not on any authority to make an arrest for the alleged misdemeanor under a warrant, but on the authority to make an arrest for a misdemeanor committed in the presence of the arresting officer.

The true rule, as shown in *Reed* v. *State,* 195 *Ga.* 842, 849 (25 S. E. 2d 692), is: "The rule is that an officer has a right to arrest for a crime committed in his presence; but there is an exception to this rule, which provides that the rule does not apply if the officer does not act on the occasion he sees the crime committed, but delays and seeks to make the arrest on a subsequent occasion after he has had ample time and opportunity to procure a warrant. This rule will be found in the Code, § 27-207, and decisions of this court. *Graham* v. *State,* 143 *Ga.* 440 (85 S. E. 328, Ann. Cas. 1917A, 595); *Glaze* v. *State,* supra, [156 *Ga.* 807, 120 S. E. 530]; *Faulkner* v. *State,* 166 *Ga.* 645 (144 S. E. 193), and cit. Cases where the exception to this rule has been applied are *Porter* v. *State,* supra, [124 *Ga.* 297, 52 S. E. 283, 2 L. R. A. (NS) 730]; *Yates* v. *State,* 127 *Ga.* 813 (56 S. E. 1017, 9 Ann. Cas. 620), yet each of these cases recognizes the rule as above stated, but applies the exception because the arrest was attempted subsequently to the time the crime was committed, and after there had been sufficient opportunity to procure a warrant. We may add further, that where a crime is committed in the presence of an officer, it is not only his right then and there to arrest without a warrant, but it is his duty to do so. *Earl* v. *State,* 124 *Ga.* 28 (52 S. E. 78)."

Therefore, the question presented is: Did the sheriff and the "undercover agent," who made the arrest in the present case, after leaving the home of the deceased after he had allegedly sold the "moonshine" in violation of the law, have ample time and opportunity to procure a legal warrant before the arrest was made?

The evidence discloses that the arresting officers were engaged

in a county-wide "roundup" of "liquor law violators" during the interval from the time the alleged illegal sale was made to the time the arrest was made, and that while being so engaged there was no time left in which to obtain a warrant for the arrest of the deceased based on the violation which occurred when the deceased sold "moonshine" to the "undercover agent."

It cannot be said that the sheriff and his aides were not zealously engaged in their duties during the time that they were arresting those persons who were allegedly violating the "liquor laws" of this State. They were helping to rid Gwinnett County of those who were allegedly selling "moonshine." However, was this enough to authorize the sheriff to circumvent the right of the deceased to a lawful arrest under a warrant where he was not arrested at the time he allegedly committed the misdemeanor in the presence of an officer? "The law is very jealous of the liberty of the citizen. In proportion as the offense is less serious, the greater the formality prescribed for the exercise of the power to deprive the citizen of his liberty. If the offense be a felony, an arrest may be made by a private person or an officer, without a warrant, if the citizen suspected of the felony is endeavoring to escape; but if the offense be a misdemeanor, then before even an officer will be authorized to arrest, he must bring himself within the exception provided in the Penal Code, § 896, [Code of 1933, § 27-207]." *Porter* v. *State*, 124 *Ga.* 297, 302 (52 S. E. 283, 2 L. R. A. (NS) 730).

The defendant presented evidence to show that the sheriff and his "aides" were busy rounding up other violators during the time that intervened between the alleged violation by the deceased and his arrest, however, this is of no concern in deciding the case. These other violators were not connected with the deceased, and although, as contended by the defendant, the other violators might have taken their leave had the deceased been arrested at the time he made the alleged sale, the fact that other persons might escape arrest is of no concern to an accused who has no connection with the other persons. He is entitled to the same protection of the law as are other persons. The "undercover agent" was authorized to arrest on the spot, but neither he, nor the sheriff, was authorized to arrest the now deceased J. W. Yancey without a warrant after they had had ample time

and opportunity to procure a warrant. The evidence disclosed that the sheriff and his "aides" had turned aside from any pursuit of the deceased and for two and one-half or three hours had been engaged in duties foreign to such pursuit, that during this time they had passed near the homes of two or more magistrates from whom a warrant for the arrest of the deceased could have been obtained, but that no effort was made to obtain a warrant for his arrest. Under the evidence neither the sheriff, on whose bond the present action was brought, nor the "undercover agent", was authorized to arrest the deceased at the time he was arrested without a warrant. Accordingly, the grant of a new trial is demanded on the general grounds.

■ Special grounds 1 and 2 of the amendment to the motion for new trial complain of the admission of evidence, over the plaintiff's objection, with reference to a roundup being made of various persons suspected of selling "moonshine" and the effect of arresting the first violator before securing evidence of violations by the other suspected violators.

It is unnecessary to determine if the evidence complained of was admissible or inadmissible because as was said in *Healen* v. *Powell,* 91 *Ga. App.* 787 (2) (87 S. E. 2d 332): "Error in improperly admitting evidence is not ground for reversal where the same evidence is subsequently admitted without objection." In the present case the plaintiff objected to the admission of such evidence when I. W. Davis, the "undercover agent", was testifying, but no objection was made when Sheriff Pittard testified to substantially the same facts. See also *G. Bernd Company* v. *Rahn,* 94 *Ga. App.* 713, 722 (96 S. E. 2d 185).

■ Special ground 3 complains that the trial court erred in refusing to permit the plaintiff to cross-examine the Sheriff of Gwinnett County, Georgia, as to what he swore to in connection with taking out the warrant for the arrest of the deceased, such warrant having been issued prior to the time the deceased violated the law for which violation he was arrested.

The court properly ruled that the warrant itself was the best evidence as to what the sheriff swore to in having the warrant issued.

■ Special ground 4 complains that the trial court erred in refusing to permit the plaintiff to cross-examine the Sheriff of

Gwinnett County, Georgia, as to what the magistrate *knew* about the issuance of the warrant.

Such evidence would have been hearsay, and although the plaintiff could have interrogated the witness as to what he told the magistrate, the evidence sought was inadmissible.

■ Special ground 5 complains that the trial court erred in admitting in evidence a certified copy of the warrant referred to in the two preceding divisions of this opinion. The objection was that such warrant was void. There was evidence introduced as to the contents of the warrant which evidence was introduced without objection. Under the authority cited in division 2 of this opinion it was not reversible error to admit this document in evidence.

This special ground of the motion also makes certain contentions that were not made on the trial as to why this document was inadmissible. Such contentions present no question for decision. *Laney* v. *Barr*, 61 *Ga. App.* 145, 146 (6 S. E. 2d 99).

■ Special ground 7 complains of the court's charge with reference to the authority of the sheriff to arrest without a warrant if there would be a failure of justice by failing to make such arrest.

As was said in dealing with the general grounds, the evidence presented on the trial demanded a verdict for the plaintiff, therefore, it necessarily follows that there was no evidence to support this charge.

■ The remaining special grounds complain of the court's charge with reference to the warrant which was introduced in evidence. The evidence demanded a finding that this arrest was not made on the basis of the warrant, and the defendant did not contend otherwise, therefore under the evidence presented such charge was necessarily error.

■ The defendant, in his brief, abandoned the contention that the trial court was without jurisdiction to try the case.

■ In the cross-bill of exceptions the only remaining contention of the defendant is that the trial court erred in sustaining the plaintiff's objection to the admission in evidence of 17 warrants issued prior to the time of the arrest of the deceased for which the present action is brought.

■

The contention of the plaintiff is that to admit these warrants in evidence would be to place the character of the deceased in issue, while the contention of the defendant is that they were relevant evidence to refute the allegations made in the plaintiff's petition that: "14. As the direct consequence of the illegal arrest, false imprisonment and illegal detention committed by the aforesaid sheriff, as aforesaid, the said J. W. Yancey died, unattended, while so illegally detained and falsely imprisoned in the Gwinnett County Jail at Lawrenceville, Georgia, on January 15, 1956." And to refute the evidence adduced on the trial when Dr. Ezzard, a witness for the defendant, was being cross-examined by the plaintiff that tended to prove that if a person is arrested and placed in jail his blood pressure will increase from anxiety and nervousness and if he has a pre-existing heart condition of certain types such increase in blood pressure could be more than the heart could stand and cause the fatal attack.

While it is true that the character of the deceased was not in issue, and that evidence as to his character, either good or bad, would ordinarily not be proper in a case like the one sub judice, however, since it was alleged that the arrest and imprisonment led directly to the death of J. W. Yancey, and the above evidence was presented by the plaintiff, and in view of evidence elicited from the same witness on redirect examination that tended to show that if a person had been arrested many times before it wouldn't tend to increase his blood pressure and would not tend to bring on a heart attack, the warrants showing prior arrests and convictions of the deceased should have been admitted in evidence to refute these claims made by the plaintiff that the arrest led directly to the death of J. W. Yancey.

*Judgments reversed on both the main bill and the cross-bill of exceptions. Felton, C. J., Gardner, P. J., Townsend, and Carlisle, JJ., concur. Quillian, J., dissents.*

QUILLIAN, J., dissenting. At about 7:30 on January 15th, 1956, the sheriff and other officers approached the home of J. W. Yancey in Gwinnett County. A revenue officer, I. W. Davis, went to the Yancey home, summoned Yancey, bought a bottle of non-tax-paid whisky from him, paid him for the same and departed. Sheriff Pittard, the defendant, did not accompany

Davis to the Yancey home, did not witness the sale, and was stationed about 400 yards distant where he could not see, hear, or otherwise ascertain what was then transpiring between Davis and Yancey. It is well settled that an offense is committed in an officer's presence only when he becomes aware of its commission through the medium of one of his senses. *Ramsey* v. *State*, 92 *Ga.* 53 (4) (17 S. E. 613); *Howell* v. *State*, 162 *Ga.* 14 (6c) (134 S. E. 59). The words of Code § 27-207 "in the presence" mean within the immediate knowledge of the officer. *Piedmont Hotel Co.* v. *Henderson*, 9 *Ga. App.* 672 (4) (72 S. E. 51). In *Porter* v. *State*, 124 *Ga.* 297 (1) (52 S. E. 283, 2 L. R. A. (NS) 730), and *Pickett* v. *State*, 99 *Ga.* 12 (1) (25 S. E. 608, 59 Am. St. R. 226) it is held that an offense reported to an officer by another, as in this case, was not committed in the officer's presence. In this case Davis reported the offense to Sheriff Pittard; this did not bring the fact of its commission within Sheriff Pittard's immediate knowledge.

The conclusion seems to me inescapable that on the first visit to Yancey's home no offense was committed in the sheriff's presence, and that he did not delay in making an arrest for a crime which had been committed in his presence. Hence, according to my view of the matter, *Reed* v. *State*, 195 *Ga.* 842 (25 S. E. 2d 692), is not applicable to the factual situation developed by the uncontradicted evidence of the present case. In this connection it is well to remember that the officer Davis was not a deputy sheriff, nor under the sheriff's control, but was a member of another legally constituted law enforcement agency.

About 10:30 the sheriff and Officer Davis returned to the Yancey residence. The sheriff summoned Yancey and when he appeared ask him "Mr. Yancey do you remember this man?" and indicated Mr. Davis. Mr. Yancey replied "Lordy, Lordy, Lordy." The sheriff testified without dispute that Yancey recognized the officer Davis. The evidence is undisputed that Yancey knew the sheriff; and was, of course, aware that he had previously on the same evening sold whisky to Davis.

Code § 38-409 reads: "Acquiescence or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission."

Numerous are the holdings of our appellate courts that where

a person is charged with an offense and makes no denial of guilt, his silence is equivalent to an admission of the offense imputed to him, among which is *Ball* v. *State,* 47 *Ga. App.* 804 (171 S. E. 726).

In a number of cases where a culprit was confronted by a person upon whom or in whose presence he had committed a crime, the failure on his part to protest innocence was held to be an admission of guilt. *Smiley* v. *State,* 156 *Ga.* 60 (118 S. E. 713).

It is, of course, necessary for the accused to hear and understand the charge made against him. *Jones* v. *State,* 2 *Ga. App.* 433 (5) (58 S. E. 559).

However, where the circumstances are such as imply that he did hear the accusation, it is for the jury to determine whether he heard it or not. *Watson* v. *State,* 136 *Ga.* 236 (1) (71 S. E. 122); *Thrasher* v. *State,* 68 *Ga. App.* 820 (2) (24 S. E. 2d 222); *Dodys* v. *State,* 73 *Ga. App.* 483 (3) (37 S. E. 2d 173).

It was likewise held in *Bray* v. *Lathan,* 81 *Ga.* 640 (1) (8 S. E. 64), the Supreme Court speaking through Chief Justice Bleckley, that a statement made in the defendant's presence which did not in express terms charge him with any offense, in the light of other proven facts, imputed to him the offense of arson. In the same opinion it was held to be a question for the jury as to whether the defendant heard the statement, and whether his failure to deny it amounted to an admission of guilt.

Declarations and conversations must be construed in the light of other related facts developed by the evidence, and the circumstances in which the evidence shows they were made. The rule is well stated in *Mosely* v. *Gordon,* 16 *Ga.* 384 (2): "Testimony, by itself vague, and apparently relating to matter not in issue, may be made certain in its character, and plainly relevant, by other facts in proof."

An admission of guilt made to an officer by a culprit is equivalent to the offense being committed in the officer's presence, so as to authorize an arrest without a warrant. *Reed* v. *State,* 163 *Ga.* 206 (5) (135 S. E. 748).

The words spoken by Yancey were ambiguous, but his failure to deny the accusation made by Sheriff Pittard was undisputed and unequivocal.

In *Piedmont Hotel Co.* v. *Henderson,* 9 *Ga. App.* 672, 681, supra, this court defined what presence of the officer meant in these words: "To justify the arrest without warrant, the officer need not see the act which constitutes the crime take place, if by any of his senses he has personal knowledge of its commission."

Certainly the admission by a culprit that he committed an offense is tantamount to the commission of the offense in the officer's presence, because it brings to the officer's "personal knowledge" the commission of the crime.

To my mind there is no doubt that Yancey knew to what the sheriff alluded when he made the inquiry as to whether he recognized Davis. He was according to the undisputed evidence cognizant that during the same evening he had sold the non-tax-paid whisky to that very man, he knew that when the sheriff, with whom he was acquainted, returned with Davis, that the sheriff was aware of the sale having been made, and that the sheriff was charging him with having sold the whisky to Davis.

But still more strongly I am convinced that viewing the matter most favorably to the plaintiff the evidence made an issue for the jury as to whether he did understand the charge and as to whether his failure to deny it was an admission of guilt.

I think the rule in this State, clearly stated in *Reed* v. *State,* 163 *Ga.* 206, supra, is that where pending an investigation of a crime committed shortly before, and of which the officer had information, an admission of guilt on the part of the culprit brings the commission of the offense within the officer's knowledge in the sense contemplated by our statute embodied in Code § 27-207.

"Under the statutes relating to intoxicating liquor, the offense is regarded as committed in his presence when it is committed with his knowledge, whether through sight, hearing, or other senses, or by the offender's admission of the fact before arrest." 4 Am. Jur. 22, § 29.

In *Reed* v. *State,* 163 *Ga.* 206, 219, supra, the arresting officer was not present and did not witness the perpetration of the crime when it was in progress. He was summoned by a third person and the victim, who upon his arrival charged the defendant with having beat her. The defendant made no denial of

the charge. While the defendant then had hold of the woman he was then doing nothing to her.

The arrest was necessarily made for an offense, not literally committed in the officer's presence, and his personal knowledge of it having been committed, which brought it within his constructive presence and as the Supreme Court held authorized him to make the arrest without a warrant was necessarily derived, at least in a practical part, from the defendant's tacit admission of guilt in his failure to deny the crime imputed to him in the officer's presence.

I am further of the opinion that in the factual situation shown by the evidence there was a question for the jury as to whether the arrest was necessary to prevent a failure of justice, and for this reason was warranted under Code § 27-207. See *Daniel* v. *State*, 185 *Ga.* 58 (194 S. E. 360). It strikes me that for the sheriff to awaken a bootlegger engaged in the secretive and surreptitious business of selling moonshine whisky in the middle of the night, apprise him that his crime had been detected and then leave him unarrested would result in the bootlegger avoiding arrest. In my opinion the question as to whether Yancey was after his arrest detained for any unreasonable time before being carried before a magistrate was also a question for the jury.

Since I am firmly convinced that the legality of Yancey's arrest and detention were properly submitted to the jury, I cannot concur in divisions 1 and 6 of the majority opinion.

Nor am I able to agree with the conclusion of division 7 of the majority opinion that the charge referred to in that division was error. The pleadings made an issue, though not a material issue as to the existence of a warrant.

The court properly though unnecessarily charged the law as to the issue pleaded. Moreover, even if the charge had been error, it could not have been hurtful for the jury was plainly and fully informed by the judge's instructions that the arrest was not made under a warrant.

From the judgment of reversal, I am compelled to dissent.