### 70122. ROBERTS v. THE STATE.
(333 SE2d 189)

POPE, Judge.

Ruben Gary Roberts brings this appeal from his conviction of driving a motor vehicle while under the influence of alcohol. *Held:*

Up to the point of appellant's arrest, the evidence of record is essentially without dispute. On November 12, 1983, at about 3:00 a.m., a Mr. Chapman was traveling north on Buford Highway in DeKalb County and attempted to turn left on a green arrow onto the westbound ramp of I-285. He testified that as he proceeded through the intersection, he was struck broadside by another car and was knocked off the road and into a state of unconsciousness. His car was totaled and he received substantial injuries. Driving conditions were good. Immediately behind Mr. Chapman was a Mr. Crane who was attempting to make the same left turn. His testimony was to the effect that appellant's vehicle, after repeatedly going slow and then fast and then slow again, struck the entire passenger side of Mr. Chapman's car, knocking it up an embankment and into a ditch. After tending to Mr. Chapman, Mr. Crane went to appellant's car and asked if he was all right. Appellant replied: "I'm all right; I just have a small cut on my head," indicating the area. While returning to Mr. Chapman, Mr. Crane observed appellant driving away south on Buford Highway, the same direction from which he had struck Mr. Chapman's car. He took down the tag number of the car appellant was driving.

Officer Martin of the Doraville Police Department then arrived at the scene of the accident. He testified that while he was in the vicinity of the above-described location, he heard what sounded to him to be a crash, a car striking another object. He went looking for it, and within minutes came upon the scene of the subject accident. He learned from Mr. Crane the tag number of the car which had driven

away (ARK 346), that it was yellow with black stripes, that it sustained heavy front end damage with one fender scrubbing a tire, and that the driver was blond-headed and had indicated to him a cut on his head. He also learned that appellant weaved across the lane just before the impact, and that Mr. Crane could smell the odor of alcohol coming out of the window of appellant's car. After having given the tag number to his radio operator for a registration check, Officer Martin learned that it was registered to a 1971 Mercury Comet and to a John Beard at 2970 Skyland Drive in DeKalb County. Since this was out of the Doraville jurisdiction, Officer Martin asked his radio operator to have a DeKalb County police officer meet him at the Skyland Drive address.

Thereafter, Officer Whittington of the DeKalb County Police Department and Officer Martin arrived at the Skyland Drive address at about the same time, some seventeen minutes after Officer Martin had arrived at the scene of the accident. There, in the driveway, was a yellow and black car with tag number ARK 346. The officers could see extensive front end damage, including the left front fender scrubbing the left front tire. The car was still very hot. Officer Martin explained to Officer Whittington why he needed him there, and they then proceeded to the front door of the house, which had a light on. A knock on the front door by Officer Whittington brought an elderly woman, appellant's mother, to the door. The officers testified that they explained their presence and asked her about the car in the driveway. She stated that the car belonged there. When asked who had been driving it, she said her son had and that he had told her the police were going to come. Asked if he was there, she said yes. Asked if the officers could see him, she again responded affirmatively and went to his bedroom to get him. She opened the door and the officers stepped inside; they testified that her words and gestures indicated her consent to their entry in the absence of an express invitation. Appellant's mother was described by Officer Martin as very cooperative. After appellant came into the living room, the officers could smell a strong odor of alcohol coming from him. Officer Martin asked for his driver's license, and when appellant leaned down under the lamp to get it out of his wallet, Officer Martin could see the cut on the top of appellant's head. Officer Martin testified that, when asked by Officer Whittington if he had been driving the subject car and had been involved in an accident, appellant denied any knowledge of it at that time. Officer Whittington testified that appellant admitted driving the car but stated that he was not familiar with the accident.

At this time Officer Whittington told appellant that he was under arrest for leaving the scene of an accident. Officer Martin then handed Officer Whittington his handcuffs. After following appellant to his bedroom in order for him to get his shoes, Officer Whittington

handcuffed him in that room. Officer Martin explained the basis for placing appellant under arrest, viz, what he was told by the eyewitness at the scene of the accident; the description of the car appellant was driving; the description of appellant with a cut on his blond head; the described car in the driveway of the Skyland Drive address; and appellant's mother stating that her son had been driving it. After removal to the Doraville Police Department and having been read the implied consent rights a number of times, appellant refused to respond.

As to the circumstances of appellant's arrest, the testimony of appellant's mother differs from that of the arresting officers. She testified that after appellant had returned home on the night in question, she assisted him with his injuries. She also testified that he was not drunk and that she smelled no odor of alcohol about him. He told her that he expected the police to come to the house, and she directed him to go to his bedroom and change his shirt, which was bloody. At this time the police knocked at the door. She testified that she opened the door a crack, and one of the officers "just pushed it on open, and walked [in] beside me. And the other [officer came] in behind him." She did not tell the officers to come into the house. She further testified that immediately upon entry, one of the officers hollered out for "that boy" who had been driving the car in the driveway. Upon being informed that appellant was in his bedroom, one of the officers stated that he intended "to lock him up" and proceeded to appellant's bedroom. The officer emerged from the bedroom with appellant in handcuffs. They proceeded directly outside and appellant was taken away. Appellant's mother was allowed to testify that during her visit with appellant at jail the next day, she noticed that appellant had sustained injuries in addition to those incurred in the subject accident.

We are presented on appeal with eight enumerations of error. Most of these enumerations, as best as we can determine from appellant's brief, challenge various rulings by the trial court relating to the issue of appellant's arrest.

1. We find no error in the trial court's denial of appellant's "motion to suppress." There is no indication in the record of any tangible, physical evidence in the State's possession which appellant was seeking to suppress. Apparently appellant was attempting to exclude the testimony of the arresting officers to the effect that appellant or his mother admitted that appellant had been driving the car which was parked in the driveway of the Skyland Drive address. See in this regard *Griffith v. State*, 172 Ga. App. 255 (1) (322 SE2d 921) (1984). Such a motion is more properly denominated a motion in limine. See generally *State v. Johnston*, 249 Ga. 413 (3) (291 SE2d 543) (1982). The only evidence presented at the hearing on this motion was that of

the two arresting officers. By this testimony, the State established a prima facie showing that appellant's arrest was legal; thus, the trial court did not err in denying the subject pretrial motion. See *Waits v. State*, 172 Ga. App. 524 (1) (323 SE2d 624) (1984). Compare *Thompson v. State*, 248 Ga. 343 (1) (285 SE2d 685) (1981), wherein the defendant's arrest was found to be illegal, even though the arresting officers had probable cause for the arrest, where the officers entered the defendant's home *without consent* in order to effect the warrantless arrest of the defendant in the absence of exigent circumstances; and *Welsh v. Wisconsin*, __ U. S. __ (104 SC 2091, 80 LE2d 732) (1984), wherein, under circumstances similar to the case at bar, the defendant's warrantless arrest in his home without the existence of exigent circumstances was found to be illegal in the absence of a showing that the police (who had probable cause for the arrest) had validly obtained consent to enter the defendant's home. See also *United States v. Reed*, 572 F2d 412, 423 n. 9 (2nd Cir. 1978), wherein the court opined that the fact that the defendant opened the door to her apartment in response to the knock of three armed federal agents did not operate in such a way as to eradicate her Fourth Amendment privacy interest; i.e., the defendant's opening the door under these circumstances did not establish the existence of a genuine consent to the agents' entry into her apartment.

Moreover, since the offense with which appellant was charged had resulted in an accident, Officer Martin was authorized to issue citations to appellant under OCGA § 17-4-23 (a) even though the offense had not occurred in the presence of a law enforcement officer. Also, we find wholly without merit appellant's allegation that OCGA § 17-4-23 was violated because Officer Martin rather than Officer Whittington (who actually arrested appellant) made out the arrest report.

2. Based upon the evidence set forth above, the trial court did not err in denying appellant's motion for directed verdict. See generally *Humphrey v. State*, 252 Ga. 525 (1) (314 SE2d 436) (1984).

3. During closing argument, the State commented that "the Judge has made a determination that this was a legal arrest. . . ." Appellant objected on the ground that this issue "was not presented before the jury . . . and it was not presented in the case. . . ." The trial court overruled the objection and directed the jury sua sponte: "There is no issue in this case as far as the legality of the arrest . . . The jury will disregard any facts or issues or any . . . inferences arising out of the case [arrest?]. That is not for your consideration."

We agree with the State that the circumstances of appellant's arrest formed a part of the evidence presented at trial. See generally *Clements v. State*, 226 Ga. 66 (1) (172 SE2d 600) (1970); *Walker v. State*, 130 Ga. App. 860 (2) (205 SE2d 49) (1974). Thus, the State was authorized to comment thereon. However, the trial court's *pretrial*

ruling denying appellant's "motion to suppress" on the ground that his arrest was illegal was not in evidence at trial, and the State's reference thereto in closing argument was clearly improper. Nevertheless, we find no prejudice to appellant under these circumstances. Whether appellant's pretrial motion is considered a motion to suppress or a motion in limine, the trial court's decision denying same under the facts in this case effectively precluded appellant from again challenging the legality of his arrest at trial. See *State v. Johnston*, supra (motion in limine); *Rogers v. State*, 155 Ga. App. 685 (2) (272 SE2d 549) (1980) (motion to suppress). Compare *Daniel v. State*, 185 Ga. 58 (3) (194 SE 360) (1937); *Thomas v. State*, 91 Ga. 204 (3) (18 SE 305) (1892); and *Davis v. State*, 172 Ga. App. 193 (1) (322 SE2d 497) (1984), wherein the offense with which the defendant was charged arose out of the arrest and the alleged illegality of the arrest formed the basis of the defense. But see *West v. State*, 155 Ga. 482 (7) (117 SE 380) (1923). Therefore, the trial court did not err in instructing the jury in this case that there was no issue as to the legality of appellant's arrest.

Although we view as erroneous the trial court's failure to sustain appellant's objection to the State's improper comment during closing argument, and as overbroad the court's instruction to the jury that they disregard any facts, issues or inferences arising out of appellant's arrest, these circumstances present no ground for reversal. Even if appellant's arrest was illegal, that fact standing alone presents no defense to a valid conviction. See *Hamby v. State*, 173 Ga. App. 750 (1) (328 SE2d 224) (1985), and cits. It follows that the trial court's actions here did not prejudice appellant's case and were, at worst, harmless error. See generally *Dill v. State*, 222 Ga. 793 (1) (152 SE2d 741) (1966). Moreover, under the facts in this case "there is no room for reasonable doubt as to guilt. No matter how many trials may be had, the facts and law demand the verdict of guilty, and such it would be, unless both the facts and law were ignored by the jury and the jurors' oaths violated. [Cits.] Of course, a verdict is never demanded in a criminal case in the sense that the court may direct a verdict of guilt. However, where the defendant makes no statement denying his guilt and the evidence authorizes only a guilty verdict, such verdict is demanded in the sense that errors occurring on the trial may be harmless. [Cits.]" *Gibbs v. State*, 168 Ga. App. 417 (1) (309 SE2d 412) (1983).

4. Appellant's remaining enumerations of error are not supported by argument and citation of authority and are thus deemed abandoned pursuant to Court of Appeals Rule 15 (c) (2). See *Fobbs v. State*, 171 Ga. App. 352 (4) (319 SE2d 522) (1984); *Graham v. State*, 171 Ga. App. 242 (20) (319 SE2d 484) (1984). We have nevertheless reviewed these enumerations and find them to be meritless. We pause

to note, however, that appellant made six written requests to charge, all dealing with the issue of arrest. Based on our holding in Division 3, supra, the trial court did not err in refusing to give any of the requested charges.

*Judgment affirmed. Deen, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I agree and believe the following should be pointed out, with respect to Division 3. Here the offense charged is driving under the influence; that is the issue the jury was called upon to decide. The legality of the arrest had nothing to do with whether or not he committed this act. He was not charged with any offense bringing into play the possibility of an illegal arrest which would have justified his act and thus provided a defense to the crime. Even if defendant was illegally arrested here, which the lower court found he was not and we agree, the illegal arrest following the drunk driving and leaving the scene would not justify or present any defense to the drunk driving.

The issue of the legality of the arrest was made by the "motion to suppress" evidence obtained pursuant to the arrest. If it was illegal, the evidence would be suppressed; if not, it would be admissible.[1] The question was one for the court to determine prior to the admission of the resulting evidence. It is the court, and not the jury, which decides on the admissibility of evidence. OCGA § 17-5-30. Subsection (b) provides that the hearing shall be outside the presence of the jury. See *Peabody v. State*, 156 Ga. App. 853, 854 (2) (276 SE2d 47) (1980). The court's determination is not then subject to the jury's analysis, but rather to this court's review. That can be done by review after conviction, as here, or by direct interlocutory appeal by the state if it loses (OCGA § 5-7-1 (4)), or by interlocutory appeal by defendants who lose. *Chumley v. State*, 160 Ga. App. 619 (287 SE2d 630) (1981), and *Wiggins v. State*, 249 Ga. 302 (290 SE2d 427) (1982).

Although not as clearly stated as it might have been, hindsight providing a brighter glass for reflection, the trial judge's statement merely explained this to the jury, saying that the jury was not to decide whether the circumstances of the arrest made it lawful or not because that issue was not to be resolved by it. The court was sub-

---

[1] This is assuming something tangible was seized. *State v. Sanders*, 154 Ga. App. 305, 306 (4) (267 SE2d 906) (1980); *Stansell v. State*, 174 Ga. App. 511 (330 SE2d 441) (1985); *Chumley v. State*, 160 Ga. App. 619 (287 SE2d 630) (1981) (intoximeter test results were regarded as suppressible pursuant to motion); *Thompson v. State*, 164 Ga. App. 104 (296 SE2d 400) (1982); *Wiggins v. State*, 249 Ga. 302, 303 (1) (b) (290 SE2d 427) (1982) (breath test gained by use of radar speed detection device reviewable pretrial by motion in limine or such motion in form or styled as motion to suppress). In the instant case, it appears we are dealing only with testimony and thus with what in effect was a motion in limine.

stantially correct, as the jury's function was rather to determine whether defendant was guilty of driving under the influence.

DECIDED JULY 8, 1985 —

*Prince A. Brumfield*, for appellant.
*Ralph Bowden, Solicitor, Bernard J. Rapkin, Assistant Solicitor*, for appellee.